Andrew J. ESCOVEDO, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–94–00485–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 15, 1995.

 

Tony Aninao, Houston, for appellant.

John B. Holmes, Jr. and Julie Klibert, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and O'CONNOR and TAFT, JJ.

## OPINION

O'CONNOR, Justice.

The primary issue in this appeal is whether a trial court is required to give an instruction on reasonable doubt regarding an extraneous offense at punishment. We hold it must.

A jury found the appellant, Andrew J. Escovedo, guilty of aggravated robbery and assessed punishment at 20 years in prison. We affirm.

### Facts

The complainant, Victoria Cortinez, worked part-time at the Gutierrez Food Market, located at 7313 Market Street in Houston. She was the only employee in the store during her shift from 10:00 a.m. to 2:00 p.m. On February 9, 1994, she opened the store about 10:00 a.m. About five minutes later, a young man came in the store to play the pinball machine. At about 10:15 or 10:20 a.m., the appellant came into the store. The appellant asked her if the guy that worked at the store was there. Cortinez told the appellant he would not be in until 2:00 or 2:30 p.m. The appellant told her he needed to wait for him because he did not have gas and his car was stalling. Although Cortinez did not see the appellant arrive, she noticed a light blue Buick parked in front of the store.

The appellant and Cortinez had several conversations while the appellant was in the store. He told her his name was Jessie Garza, and he had just gotten off work at Brown & Root. He told her he could get her husband a job at Brown & Root because his step-father was a supervisor. At about 12:30 p.m., the young man finished playing pinball and left the store. As Cortinez was leaning on the counter watching television, the appellant reached across the counter and put a knife to her throat. The knife blade was

about four inches long. The appellant told Cortinez to give him the money in the cash register. When she saw the knife, Cortinez threw herself backwards. When she fell back, the knife cut her neck just below her left ear.

As Cortinez got up, she grabbed an umbrella and began to swing it and to scream. The appellant repeatedly told her to give him the money in cash register. He then tried to open the register but could not. Cortinez continued to scream for the woman who lived next door. The appellant walked to the front door as if he were leaving, but then turned around, again demanded money, and threatened to kill her. About that time a car drove up, and the appellant left in the blue Buick.

Houston Police Officer Alberto Garcia received information about the robbery and developed a suspect. He completed a photo spread and took it to Cortinez. Based on the photo spread, Officer Garcia obtained an arrest warrant for the appellant. At the time of his arrest, the appellant was driving a light blue Buick.

### Jury charge

In point of error one, the appellant contends the trial court erred by refusing to instruct the jury during the punishment phase of trial on the burden of proof on the extraneous offense.

During the punishment phase of trial, the State offered evidence of an extraneous offense committed by the appellant. Guadeloupe Perez testified that, on February 9, 1994, before 3:00 p.m., the appellant entered the fruit stand where she worked. He told her he was waiting for someone. He hung around her fruit stand and the taqueria next door for about four hours. At about 7:00 p.m., the appellant pulled out a gun and pointed it at her. He threatened to kill her and demanded the $50 she had in her hand. He took the money and left. Later, she identified him in a photo spread.

The appellant took the stand at punishment and denied that he robbed either woman. He also denied that he drove a blue Buick and that he was arrested while in a blue Buick.

The appellant objected to the charge and requested the court to include an instruction that the jury should not consider the extraneous offense unless it believed beyond a reasonable doubt the appellant committed the offense. The trial court denied the request.

The appellant argues the instruction was required under TEX.CODE CRIM.P. art. 37.07, § 3(a) (Vernon Supp.1995). That provision of the Code of Criminal Procedure provides in part:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, *and notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible,* regardless of whether he has previously been charged with or finally convicted of the crime or act.

(Emphasis added.) Since the amendment, which was adopted in 1993, the Court of Criminal Appeals has not addressed the issue whether the trial court is required to give an instruction on reasonable doubt about extraneous offenses during the punishment phase of the trial.[1]

■ The Court of Criminal Appeals has addressed the issue whether an instruction on burden of proof regarding an extraneous

---

1. In *Grunsfeld v. State,* 843 S.W.2d 521 (Tex. Crim.App.1992), the court held it was reversible error to admit unadjudicated extraneous offense evidence at the punishment phase of a noncapital offense. In 1993, the legislature amended TEX.

CODE CRIM.P. art. 37.07, § 3(a) to allow such evidence to be admitted at the punishment phase. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex.Gen.Laws 3589, 3762.

offense is necessary at the **guilt-innocence phase** of trial (not at punishment, as here). In *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim.App.1994), the court held the trial court must, if properly requested, instruct the jury at the guilt-innocence phase of trial not to consider an extraneous offense unless the jury believes beyond a reasonable doubt that the defendant committed the extraneous offense. The court acknowledged that the burden of proof in the jury instruction is tied to the burden of proof imposed on the State to prove the defendant committed the extraneous offense. *Id.* at 75. The court held the burden of proof imposed on the State is that the State must prove an extraneous offense at the guilt-innocence stage of the trial beyond a reasonable doubt. *Id.; see also Harrell v. State*, 884 S.W.2d 154, 159 (Tex.Crim. App.1994). In a footnote, the court said, "We are not concerned with the jury instruction given at punishment. *But cf.* TEX.CODE CRIM.PROC. art. 37.07, § 3(a)." 890 S.W.2d at 76 n. 8.

One court has addressed the same issue as we address in this case. In *Mitchell v. State*, 892 S.W.2d 213, 215 (Tex.App.—Texarkana 1995, pet. filed), the court held no burden of proof instruction on extraneous offenses was required at the punishment phase of the trial. The court held that proof beyond a reasonable doubt was a preliminary requirement for the admissibility of the evidence of extraneous offenses, not part of the State's case. Thus, the court reasoned, the trial court, not the jury, makes the determination at the punishment phase of trial. *Id.*

The dissent in *Mitchell* agreed with the majority, that the amendment to TEX.CODE CRIM.P. art. 37.07, § 3(a) creates a threshold of admissibility requiring the trial court to determine whether the extraneous offense has been shown beyond a reasonable doubt. 892 S.W.2d at 216. The dissent noted the

instruction, if requested by the defendant, is required during the guilt-innocence phase and argued there is nothing in article 37.07 to indicate the instruction does not apply in the punishment phase. *Id.* The dissent concluded that, if no instruction is required, the trial court would become the exclusive fact finder instead of the jury and the legislature had not specifically provided that the trial court would preempt the jury's fact finding role. *Id.* at 216–17.

Here, the State urges us to adopt the opinion of the majority in *Mitchell.* The State argues that article 37.07, section 3(a) provides the State may *offer* evidence of extraneous offenses that it shows beyond a reasonable doubt the defendant committed; therefore, the *admission* of the evidence is predicated on the State proving the appellant committed the offense beyond a reasonable doubt. The statute requires the trial court to determine, beyond a reasonable doubt, the defendant committed the offense before the State may offer, and the court may admit, the evidence. The State argues the trial court is required by the statute to find beyond a reasonable doubt that the appellant committed the extraneous offense; however, the statute does not make it an issue for the jury to determine. Therefore, it is a question of law for the court to determine and not a question of fact for the jury.[2]

■ The appellant, on the other hand, urges us to adopt the dissenting opinion in *Mitchell.* The appellant argues that, because the standard of proof for the admissibility of extraneous offense evidence is the same at the guilt-innocence phase and at the punishment phase, there is no reason not to require the burden of proof instruction at the punishment phase when it is required at the guilt-innocence phase. We agree with the appellant and the dissent in *Mitchell.*

2. The State also argues that, to determine whether an instruction is required, it is necessary to examine the reasons why extraneous offense evidence is admitted at the guilt-innocence phase and at the punishment phase. At the guilt-innocence phase, an extraneous offense may be offered under TEX.R.CRIM.EVID. 404(b), and the State introduces the evidence to prove an element of its case. Therefore, it stands to reason the jury should be instructed to consider the evidence

only if the State meets its burden. At the punishment phase, when there are no enhancement paragraphs, the State argues it has no burden of proof. The State does not have to offer any evidence and may rely on the evidence offered at the guilt-innocence phase of trial. We note, however, that article 37.07, section 3(a) is an exception: it places a burden on the State before it may introduce extraneous offense evidence at the punishment phase.

The legislature decided to allow the admission of extraneous offense evidence at the punishment phase, but in doing so placed a burden on the State to prove the extraneous offense beyond a reasonable doubt. There is nothing in article 37.07 that reflects the legislature's decision to deprive the jury of its ultimate fact finding role. The Court of Criminal Appeals decisions in *Harrell* and *George* make it clear there is an indivisible connection between the standard of proof for the admissibility of extraneous offense evidence and the jury instruction at the guilt-innocence phase of trial. *Harrell,* 884 S.W.2d at 157. We find nothing in article 37.07 severs that connection at the punishment phase of trial.

■ Because we hold the trial court erred in denying the appellant's request for the instruction, we must determine whether the error harmed the appellant. The standard for reviewing errors in the charge is included in the Code of Criminal Procedure. TEX. CODE CRIM.P. art. 36.19 (Vernon 1981). We do not rely on TEX.R.APP.P. 81(b)(2) to review charge error. Article 36.19 provides in part that, whenever it appears from the record there is error in the charge, the judgment shall not be reversed unless the error was calculated to injure the rights of the defendant or unless it appears the defendant has not had a fair and impartial trial.

■ The appellant preserved error by properly objecting to the charge at trial. Therefore, before we can reverse the appellant must show the error was calculated to injure his rights.[3] *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g). In other words, the appellant must show he suffered some actual, rather than theoretical, harm from the error. *Arline,* 721 S.W.2d at 351. Any harm, regardless of the degree, that results from preserved charging error is sufficient to require reversal. *Id.* We must assay the actual degree of harm in the error in light of the entire jury charge, the evidence, including contested issues and weight of probative evidence, the argument of coun-

sel, and any other relevant information revealed by the record of the trial as a whole. *Id.* at 351–52; *Almanza,* 686 S.W.2d at 171.

■ *The entire jury charge.* There was no other error in the charge. The only discussion about the burden of proof in the charge was the statement "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant."

*The evidence, including contested issues and weight of probative evidence.* Because an instruction on burden of proof is more crucial in a case where the sufficiency of the evidence is a close issue, we consider the relative quantity and weight of the evidence. The evidence was overwhelming that the appellant committed both the crime for which he was tried and the extraneous offense. The defendant made a perfunctory denial that he committed either crime. The defendant's denial of the crime was undermined when he denied owning a blue Buick, the car the complainant testified he drove. The police officer testified he arrested the appellant while the appellant was driving a blue Buick.

*The argument of counsel.* The error in the charge was somewhat exacerbated by the argument of the prosecutor, who devoted most of his closing argument to comparing the similarities between the extraneous offense and the robbery for which the appellant was convicted. He argued the appellant was a continuing threat because, in one day, he escalated the level of violence from a knife to a gun. The prosecutor did not mention any burden of proof related to the extraneous offense. On the other hand, the defense counsel argued that Ms. Perez might have been mistaken in her identity of the appellant and warned the jury that the appellant had not been tried or found guilty of that burglary. Although the defense counsel's argument was not a substitute for the instruction, the issue regarding the lack of conviction of the extraneous offense was raised before the jury.

---

3. For error that was not preserved at trial, the error must have been so harmful that the defen-

dant was denied a fair and impartial trial. *Arline,* 721 S.W.2d at 351.

*Other relevant information revealed by the record of the trial as a whole.* Under this factor, we focus on whether there is any actual indication that the jury might have considered the extraneous offense because of the absence of an instruction on the burden of proof. That is, would the jury have disregarded or discounted the extraneous offense if the instruction had been included. The appellant did not make a compelling witness at punishment. When he was asked by his counsel if he wanted probation, he merely said "It's up to the jury." Nothing in this record tends to show the jury would not have considered or would have discounted the extraneous offense if the burden of proof had been included in the charge.

Considering the evidence in this case and the other factors, we find the jury would have made the same finding regarding punishment if an instruction had been given. We find the appellant was not harmed by the trial court's error in refusing to instruct the jury.

We overrule point of error one.

### Sufficiency of the evidence

In point of error two, the appellant contends the evidence was insufficient to sustain his conviction for aggravated robbery because the State's eyewitness mistakenly identified him as the robber.

▮ When reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App. 1993); *Barnes v. State*, 845 S.W.2d 364, 365 (Tex.App.—Houston [1st Dist.] 1992, no pet.). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we are not authorized to reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Glass v. State*, 761 S.W.2d 806, 807 (Tex. App.—Houston [1st Dist.] 1988, no pet.).

The appellant's sole complaint is that Cortinez mistakenly identified him as the person who robbed her because he did not have a tattoo in the location where she described one. Cortinez testified the appellant had a funny looking or different tattoo on his left arm. She described the tattoo as looking like a square with Xs, little balls, and a snake in it. The appellant was asked to show the jury his tattoo. The tattoo was on the appellant's left arm. Cortinez admitted, however, she had been mistaken about the exact location of the tattoo on his left arm. She had testified she thought the tattoo was on the inside of the appellant's left arm, but it was on the outside of his left bicep.

▮ The appellant argues this inconsistency in Cortinez' testimony renders the evidence insufficient to support his conviction. We disagree. The inconsistent testimony about the location of the appellant's tattoo was before the jury. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986); *Griffin v. State*, 850 S.W.2d 246, 253 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). The jury may believe or disbelieve all or any part of a witness' testimony. *Sharp*, 707 S.W.2d at 614; *Moody v. State*, 830 S.W.2d 698, 700 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). It is within the province of the jury to reconcile conflicts and contradictions in the evidence, and such conflicts will not call for reversal if there is enough credible testimony to support the conviction. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *Moody*, 830 S.W.2d at 700.

▮ We find there is sufficient credible evidence to support the appellant's conviction. Cortinez testified as to where she thought the tattoo was on the appellant's left arm but was mistaken about the exact location. However, the record shows Cortinez positively identified the appellant as the person who placed a knife to her throat and demanded money. She testified the appellant had the strange looking tattoo on his left arm, and in fact, the appellant had the tattoo she described on his left arm. She also testified he was in the store for almost three

hours, and spent most of the time across the counter talking to her.

Appellant asks this Court to apply the factual insufficiency standard of review discussed in *Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Crim.App.1990). We decline. In *Meraz,* the court held a defendant may seek a factual review of evidence in support of an **affirmative defense** on which the defendant has the burden of proof. *Id.* This case involves the sufficiency of the evidence for aggravated robbery, an offense the State has the burden to prove beyond a reasonable doubt. Therefore, the standard of review set forth in *Meraz* is inapplicable to the facts of this case. Our disposition of this issue is consistent with our earlier opinions. *See, e.g., Bynum v. State,* 874 S.W.2d 903, 908 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Moody v. State,* 830 S.W.2d 698, 704 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Lopez v. State,* 824 S.W.2d 298, 303–04 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

We overrule point of error two.

### Motion to suppress identification

In point of error three, the appellant contends the trial court abused its discretion by overruling his motion to suppress the in-court identification of him because the pretrial photo identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification that violated due process.

We apply a two-step analysis to determine the admissibility of an in-court identification. *Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim.App.1993). First, we determine if the pretrial identification procedure was impermissibly suggestive. *Id.; Coleman v. State,* 760 S.W.2d 356, 359 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Second, if the procedure was impermissibly suggestive, we determine if there was a substantial likelihood of irreparable misidentification. *Delk,* 855 S.W.2d at 706; *Coleman,* 760 S.W.2d at 359.

Trial-time identification testimony is admissible if its reliability outweighs the corrupting effect of the unnecessarily suggestive pretrial identification. *Delk,* 855 S.W.2d at 706. To sustain a challenge to an in-court identification, a defendant must prove by clear and convincing evidence that the identification was tainted by improper pretrial identification procedures. *Id.* We will not reverse the trial court's decision to admit evidence unless a clear abuse of discretion is shown. *Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Crim.App.1991); *Simpson v. State,* 886 S.W.2d 449, 451 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

The appellant contends the photographic array was unnecessarily suggestive because (1) his photograph and only one other photograph in the six person array had a tear drop tattoo by the eye; (2) his photograph was the only photograph to appear both in the photo spread and in a book of photographs the complainant viewed; and (3) only one other person's photograph in the photo spread had the same amount of facial hair as the appellant in his photograph. The appellant argues that the identification procedure was unnecessarily suggestive because the other participants were greatly dissimilar in appearance from him.

At the hearing on the motion to suppress, Cortinez testified that about six or seven days after the robbery, the police brought the photo spread to her house and asked her to make an identification. She positively identified the appellant as the person who robbed her. The police officer did not tell her which person to choose and did not pressure her to pick one of the photographs.

Cortinez testified that she saw the appellant's face for three hours while he was in the store. He had a tear drop tattoo on his left eye, but the tattoo did not help her identify him as the robber; she unequivocally testified that she identified him from his face. She testified one other man depicted in the photo spread had a similar tattoo by his eye and a second man had a similar mark that was not a tattoo on the same side of his eye. She testified one other person had the same amount of facial hair as the appellant.[4]

---

4. The appellant was depicted in the sixth photo-

graph in the spread. The prosecutor asked the

Guadaloupe Perez also testified at the hearing about the extraneous robbery offense. She testified that before the appellant robbed her, he hung around the store for about four hours. She, therefore, had the opportunity to get a good look at his face and to talk to him. When a police officer showed her a photo spread and asked her if she knew anyone in the photographs, she identified the appellant. She had no difficulty in picking him out of the array, and the police officer did not indicate who she should pick from the array. She also testified that she picked the appellant's photograph out of a book the police showed her. She testified the appellant appeared about the same way in the photograph as he did on the day he robbed her.

Officer Garcia testified he and another officer prepared a photo spread after getting information about the robbery from Cortinez. They chose photographs of six Hispanic men, including the appellant. The other Hispanic males were chosen because they were similar to the appellant. He presented the photo spread separately to Cortinez and Perez. The officer told them not to choose a photograph unless they were sure the person was the one who committed the robbery. He did not suggest to them who they should choose and did not pressure them. Both Cortinez and Perez identified the appellant after about two seconds.

The trial court ruled that Cortinez and Perez could identify the appellant in court because the photo spread was not suggestive.

In a pretrial identification procedure, it is not essential that all the individuals be identical. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex.Crim.App.1985). Neither due process nor common sense requires exact likeness of the defendant in the array. *Id.* While subjects in a photographic array do not need to be identical, their similarities in appearance should provide a reasonable test

for the witness's capacity to reliably identify the perpetrator. *Ford v. State*, 794 S.W.2d 863, 866 (Tex.App.—El Paso 1990, pet. ref'd) (differences in hair lengths were not suggestive, and no subject stood out because of his age).

After reviewing the evidence at the hearing and reviewing the photo spread, we find the trial court did not abuse its discretion by denying the motion to suppress. The record shows the appellant had a teardrop tattoo near his left eye and had a beard and mustache. One other person in the array had a similar tattoo and similar facial hair. Another had a similar mark near his eye. Others had a beard and mustache. All of the photographs were pictures of Hispanic males with characteristics similar to the appellant's. The appellant did not show with clear and convincing evidence that the photo spread was impermissibly suggestive and tainted the in-court identification of him.

We find the appellant's contention that the procedure was tainted because his photograph was the only photograph to appear both in the photo spread and in a book of photographs the complainant viewed to be without merit. Cortinez, the complainant, did not identify the appellant from a book of photographs; she only saw his photograph in the array. Therefore, her identification of him was not tainted. Perez testified at the hearing she identified him from a photo book and also from the array. However, there is nothing in the record to show how seeing the appellant's picture in a photograph book was unduly suggestive, and the appellant does not argue how it was suggestive.[5]

Even if the photo spread were somehow suggestive, we find that it was unlikely the appellant was misidentified. When examining the evidence in light of this second factor, a court must look to the totality of the circumstances and consider: (1) the opportu-

trial court to take notice that the persons in photograph one, two, five, and six all had a beard and a mustache and that in photographs five and six, both had a beard, mustache, and a tear drop tattoo.

5. Ms. Perez testified at the hearing and at trial through an interpreter. Her testimony at the

hearing is confusing. She testified the appellant's picture was the only one from the array to appear in the photograph book and also in the array; then she testified that all photographs in the array were also in the book. At trial, however, she testified she only viewed the photo spread and not the photograph book.

nity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Delk,* 855 S.W.2d at 706; *Coleman,* 760 S.W.2d at 359. Unless the circumstances of the photo spread show a substantial likelihood of misidentification, the identification testimony is considered reliable and admissible. *Madden v. State,* 799 S.W.2d 683, 695 (Tex.Crim.App.1990).

Both Cortinez and Perez testified they saw the appellant for several hours. Both had several conversations with him, and therefore, he held their attention. Both positively identified the appellant from the array and in court. Officer Garcia testified that both identified the appellant in about two seconds after viewing the photographic array. Cortinez testified she saw the photo spread about six or seven days after the robbery. These facts do not reveal a substantial likelihood of misidentification.

We overrule point of error three.

We affirm the trial court's judgment.