Gerardo GUERRA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–95–108–CR.

Court of Appeals of Texas,
Corpus Christi.

Sept. 26, 1996.

Discretionary Review Refused
Feb. 19, 1997.

---

**30** ■ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

J. R. "Bobby" Flores, McAllen, for Appellant.

Rene Guerra, District & County Attorney, Theodore C. Hake, Traci A. Sellman, Asst. Criminal District Attorneys, Edinburg, for Appellee.

Before DORSEY, FREDERICO G. HINOJOSA, JR. and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellant, Gerardo "Jerry" Guerra, was convicted of murdering his wife, Elizabeth "Beth" Guerra, and sentenced to twenty years confinement. By two points of error, appellant challenges the exclusion of the portion of his pastors' testimony concerning exculpatory statements made by appellant, and the admission of evidence of extraneous offenses or bad acts. We affirm.

## FACTS

Appellant and his wife, Beth, were separated and had a four year old son, Derrick Guerra. Prior to the shooting, appellant told several people he wanted to reconcile with his wife. In his attempt to find her, he first went to the home of Evangelina "Vangie" Cruz's father. Vangie is the friend with whom Beth was living. Appellant left his pager number with Vangie's father with instructions for Beth to call him. Appellant then went to a friend's house and learned from Virginia, another friend, that Derrick had been present at Beth's "sex parties" (Beth was a topless dancer). Virginia also told appellant that she had seen Derrick with "sticky stuff on his face and butt" and "white powder" around his nose.

Appellant testified that he then realized why Derrick became upset and cried when appellant returned him to Beth's home that morning. Appellant stated that he just "snapped" and "freaked out."

Appellant proceeded to Vangie's house and entered with a cocked gun. Appellant testified that as he and Beth argued, he reached to pull her off the bed and the pistol "just went boom." When Vangie did not respond to his call for help, appellant drove off.

According to appellant, he proceeded to a church, knowing his mother was there. After he told her he had accidently shot Beth, they went home. Appellant's pastors consoled appellant at the church and at the house.

## EXCULPATORY STATEMENTS

■ By his first point of error, appellant claims the trial court erred by excluding testimony of appellant's pastors concerning exculpatory statements appellant made to them. While at his mother's house, hours after the shooting, appellant recounted the episode to his pastors and told them repeatedly that the shooting was an accident. Although appellant testified that the shooting was an accident, he sought to have his pastors confirm his remorse and the fact that he told them the shooting was accidental. The trial court permitted the pastors to testify about appellant's actions and appearance, but did not allow them to recount statements made to them by appellant.

Appellant first sought to introduce the testimony as the opinion of experts qualified in counseling. In the absence of the jury, the following exchange ensued:

THE COURT: Wait just a minute. Make your objection. Let me hear it. Make it sound legal. Let me hear what you're—

PROSECUTOR: My objection is that his witness' testimony is based on hearsay statements that the Defendant made to him regarding this incident. He had no personal knowledge of this incident other than from the Defendant telling him what happened at the scene.

And in addition, Your Honor, it is invading the province of the jury and it is calling for a legal conclusion that—did he intentionally or knowingly. That is

the issue in this case, Your Honor, and this preacher is deciding for the jury whether this was an accident or intentional. And that is the key to this case, Your Honor.

DEFENSE: Your Honor, if that is their objection then under Rule 803, the hearsay exception, I can then elicit whether or not [appellant] asked him was it intentional or accidental based on the presence [sic], sense, and impression, number one, based on excited utterance, number two, based on 19.06 of the Penal Code as it existed prior to September 1, 1994, if that is her objection.

THE COURT: Counsel, in viewing the nature of the question and viewing the objection and then again attempting to use, without the benefit of full opportunity to brief the law, it would seem to me that any individual—any individual—forget this case—any individual can shoot and kill somebody and then run to the pastor, preacher, priest, rabbi or otherwise and there in a self-serving way convince that person to come in and give an opinion. And the Court thinks that objection is good.

The trial court sustained the State's objection and did not allow the pastor to give his opinion as to whether the shooting was accidental. The appellant established a bill of exceptions by eliciting the following testimony from the Pastor Amancio Chapa:

Q: Mr. Chapa—Pastor Chapa, did [appellant] express to you in his terms whether this death was accidental or intentional?

A: Yes, sir.

Q: Did he express that to you in more than one occasion?

A: Yes, sir.

Q: Is that the impression that you got from him in speaking with him, that it was accidental?

A: Yes, sir.

Q: And you counseled him based on your conversation with him, correct?

A: Yes, sir.

Q: Would you say that he was under stress at the time he was making those statements?

A: Yes, sir.

Q: And based on your knowledge of the events as you know them, were they immediately after the incident that he was relating to you?

A: Yes, sir.

Defense counsel then attempted to re-urge his position:

DEFENSE: My point to the—

THE COURT: Is the jury ready?

BAILIFF: If you want them.

THE COURT: Bring them in. If I want them, okay.

DEFENSE: Just for the Court to know, when the prosecution has these witnesses it is an excited utterance and it's admissible under—

THE COURT: Counsel, you're in the 206th. You're not in some other Court.

DEFENSE: I know that, Judge.

THE COURT: I know.

DEFENSE: I realize I am in the Supreme Court of this courthouse, Judge.

THE COURT: We are going to—

DEFENSE: I haven't lost sight of that, Your Honor.

THE COURT: Pastor, don't—we have to deal with each other, these lawyers and myself, day in and day out. And some of them would benefit tremendously if they would attend your church. I am talking about the lawyers.

(The jury returned)

I know they would. All right. You may continue, Mr. Flores.

. . . .

The Court has sustained the objection of the State. You may proceed, Mr. Flores.

Although Pastor Chapa did not actually testify that appellant told him it was an accident, the second pastor, Adolfo Alvarado,

filled that void by testifying as the defense continued to establish its bill of exceptions.

Pastor Alvarado testified that he saw appellant at his mother's house on the day of the incident, that appellant was depressed, crying, and afraid, and that appellant told him fifteen to twenty times that the death was accidental. The court then reiterated its ruling prohibiting the pastor from testifying as to "what the Defendant said to him."

■ The question of admissibility of evidence shall be determined by the trial court and, absent a clear abuse of discretion, the trial court's ruling will not be disturbed on appeal. *See* TEX.R.CRIM. EVID. 104(a); *McVickers v. State,* 874 S.W.2d 662, 663 (Tex. Crim.App.1993). If a trial court excludes evidence offered by a defendant, it is incumbent upon the defendant to make an offer of proof to preserve any error in refusing to admit the evidence. TEX.R.CRIM. EVID. 103(a)(2); TEX. R. APP. P. 52(b); *Easterling v. State,* 710 S.W.2d 569, 575 (Tex.Crim.App.), *cert. denied,* 479 U.S. 848, 107 S.Ct. 170, 93 L.Ed.2d 108 (1986). It is the burden of the party seeking to admit challenged testimony to inform the trial court of the theory of admittance. *Cf. Vargas v. State,* 697 S.W.2d 496, 498 (Tex.App.—Corpus Christi 1985, no pet.)(an objection to the admission of evidence must state the specific grounds of the objection in order to merit consideration)(*overruled on other grounds Nugent v. State,* 749 S.W.2d 595 (Tex.App.—Corpus Christi 1988, no pet.)).

■ The excited utterance exception to the hearsay rule states: "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. TEX. R. CRIM. EVID. 803(2). The critical factor in determining when a statement is an excited utterance under Rule 803(2) "is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App.1995)(*quoting McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim.App. 1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993)). The time elapsed between the occurrence of the event

and the utterance is only one factor considered in determining the admissibility of the hearsay statement. *Lawton,* 913 S.W.2d at 553. If the statement is made while the witness is in the grip of emotion, excitement, fear, or pain, and it relates to the exciting event, it is admissible even after an appreciable time has elapsed between the exciting event and the making of the statement. *Penry v. State,* 691 S.W.2d 636, 647 (Tex. Crim.App.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *see Lawton,* 913 S.W.2d at 553 (witness's statement one hour after seeing father-in-law "gunned down" was still an excited utterance); *Jones v. State,* 772 S.W.2d 551, 554–55 (Tex.App.—Dallas 1989, pet. ref'd)(where assault occurred between 11:00 p.m. and midnight, and victim spoke to third person in the morning, victim was still under the influence of emotion, excitement, fear, and pain arising from the assault when she spoke; the statement was an excited utterance).

We find that the statements made by appellant to his pastors immediately after the shooting qualify as excited utterances. Furthermore, a review of the record reveals that, although appellant first offered the testimony on the basis of expert opinion, he subsequently offered it as an excited utterance exception to the hearsay rule. Appellant said "excited utterance," made a bill laying the proper predicate for an excited utterance exception, then re-urged an "excited utterance" exception before being thwarted by the trial court.

■ Based on this proper foundation for the excited utterance exception, we conclude that the trial court abused its discretion by excluding the pastors' testimony. We next consider whether such error was harmless. TEX. R. APP. P. 81(b)(2).

■ Texas law provides that error cannot be predicated upon a trial judge's ruling that admits or excludes evidence unless substantial rights of the party are affected. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex. Crim.App.1991). A trial court's refusal to admit evidence is reversible only if the offered evidence is relevant and its exclusion was harmful to the accused. TEX. R. APP. P.

81(b)(2); *Bird v. State*, 692 S.W.2d 65, 70, 73 (Tex.Crim.App.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). The test for harm when evidence is excluded is whether there is a reasonable probability that the absence of the evidence might have contributed to the conviction or affected the punishment. *Id.*

 The State argues that since appellant testified that the shooting was accidental, the pastors' testimony would have been cumulative. The standard on exclusion of cumulative evidence and harmless error dictates that no harm results when evidence is excluded if other evidence of substantially the same nature is admitted. *Womble v. State*, 618 S.W.2d 59, 61 (Tex.Crim.App.1981).

The jury heard appellant testify about his conversation with his pastors and his statements that the shooting was accidental. Furthermore, even though the pastors were not allowed to recount appellant's excited utterances, they gave a consistent description of appellant's physical and emotional state, and of the sequence of events from the church to appellant's mother's house.

We conclude that while the pastors' excluded testimony was relevant, it was also cumulative of appellant's testimony. The exclusion was therefore harmless.

## EXTRANEOUS OFFENSE TESTIMONY

 By his second point of error, appellant contends that the trial court erred during the punishment phase of the trial by allowing the State to present evidence of extraneous offenses or "bad acts" without first determining beyond a reasonable doubt that appellant in fact committed the offenses or "bad acts." Specifically, appellant contends that the trial court should not have allowed the State to elicit testimony from

Beth's sister during the punishment phase which revealed that appellant had previously assaulted Beth.

 When a party attempts to adduce evidence of "other crimes, wrongs or acts," in order to preserve error on appeal, the opponent of that evidence must object in a timely fashion. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1990); *see also Rachal v. State*, 917 S.W.2d 799, 816 (Tex.Crim.App.1996)(following *Montgomery* analysis in consideration of extraneous evidence offered during punishment phase). Optimally, the opponent should object that such evidence is inadmissible under Rule 404(b).[1] *Montgomery*, 810 S.W.2d at 387. An objection that such evidence is not "relevant," or that it constitutes an "extraneous offense" or "extraneous misconduct," although not as precise as it could be, is sufficient under the circumstances to apprise the trial court of the nature of the complaint. *Id.* Once that complaint is lodged, it is incumbent upon the proponent of the evidence to satisfy the trial court that the "other crime, wrong, or act" has relevance apart from its tendency "to prove character of a person in order to show that he acted in conformity therewith." *Id.* If the trial court rules that the evidence has relevance apart from character conformity, it has ruled on the full extent of the opponent's objection. *Id.* Error is preserved as to whether the evidence was admissible under Rule 404(b), however, an objection that the proffered evidence amounts to proof of an "extraneous offense" will no longer suffice, by itself, to invoke a ruling from the trial court whether the evidence, assuming it has relevance apart from character conformity, is nevertheless subject to exclusion on the ground of unfair prejudice. *Id.* at 388. A further objection based upon Rule 403 [2] is required. *Id.*

---

1. TEX.R.CRIM. EVID. 404(b) provides

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

2. TEX.R.CRIM. EVID. 403 provides
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

The State asked Teresa Morales, Beth's sister, if she was aware of any prior incidents when appellant assaulted Beth. Morales testified that appellant used to beat her "every time they got in a fight." She started to recall a fight that Beth told her about, but which she had not witnessed. Appellant objected on the basis of extraneous offense testimony and the court overruled the objection. Appellant lodged no further objection.

Since appellant did not follow up with another objection based on unfair prejudice, he did not fully preserve error on an extraneous evidence complaint; only the objection to relevance is preserved. This would be significant if not for the fact that appellant does not directly complain that the trial court erred in admitting the evidence. Rather, he complains that the trial court did not follow proper procedure before allowing the evidence.

Appellant argues that article 37.07 of the Texas Code of Criminal Procedure requires that, *before the jury hears the testimony in question,* the judge should determine whether appellant committed the extraneous offense beyond any reasonable doubt. The provision states:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp.1996).

One appellate court has interpreted the statute to mean that the requirement of proof beyond a reasonable doubt is a preliminary requirement for the admissibility of evidence of extraneous offenses rather than a part of the State's case, and that the judge, not the jury, makes the determination at the punishment phase of trial. *Mitchell v. State,* 892 S.W.2d 213, 215 (Tex.App.—Texarkana 1995, pet. granted). The Texarkana Court concluded that no instruction on the burden of proof in extraneous offense testimony was required at the punishment phase of trial. *Id.*

Another court of appeals, however, addressed the same issue and reached the opposite conclusion. In *Escovedo v. State,* 902 S.W.2d 109, 113 (Tex.App.—Houston [1st Dist.] 1995, pet. granted), the court noted that if requested by the defendant, an instruction is required during the guilt-innocence phase. *Id.* (citing the Texas Court of Criminal Appeals holding in *George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App.1994)). The Houston court reasoned that because there is no indication in article 37.07 that the instruction requirement only applies in the guilt-innocence phase, it should also apply in the punishment phase. *Escovedo,* 902 S.W.2d at 113 (adopting dissent in *Mitchell*). The court further reasoned that if no instruction is required, the trial court, instead of the jury, would become the exclusive fact finder and that "[t]here is nothing in article 37.07 that reflects the legislature's decision to deprive the jury of its ultimate fact finding role." The court held that the trial court erred in denying the appellant's request for the instruction.

■ We agree with the court in *Escovedo* and hold that the requirement of proof beyond a reasonable doubt for extraneous offense evidence during the punishment phase is properly left for the fact finder, in this case the jury, to decide. If properly requested, appellant would have been entitled to an instruction on the burden of proof for extraneous offenses during the punishment phase of his trial. In that regard, we clarify the holding in *Escovedo,* by pointing out that a defendant's right to an instruction on extraneous offenses operates independently of whether or not he preserves error on the evidence's admissibility. Even if a defendant

fails to preserve error, he is still entitled to the instruction if it is requested. However, since the defendant here also failed to request an instruction and did not object to the charge, he waived error. *See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985). Therefore, we overrule appellant's second point of error.

The judgment of the trial court is AFFIRMED.