

# NUMBER 13-22-00333-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

JOSHUA DAVID LETT,                                        Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

---

### On appeal from the 18th District Court
### of Johnson County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Longoria**

Appellant Joshua David Lett pleaded guilty at trial to the offense of continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02(b). The jury sentenced appellant to life imprisonment. By one issue, appellant argues that the trial court erred when it excluded the expert testimony of a punishment witness. We affirm.

# I.   BACKGROUND[1]

On February 17, 2022, appellant was indicted for continuous sexual abuse of a young child, N.H., appellant's step-daughter.[2] The indictment alleged that appellant:

> During a period that was 30 or more days in duration, namely from on or about August 13, 2016, through March 1, 2021, when the defendant was 17 years of age or older, commit[ted] two or more acts of sexual abuse against [N.H.], a child younger than 14 years of age at the time of the offenses, namely: indecency with a child by sexual contact, to-wit: with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [N.H.] by touching the genitals of [N.H.]; indecency with a child by sexual contact, to-wit: with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [N.H.] by touching [N.H.] with the genitals of the defendant; aggravated sexual assault of a child, to-wit: intentionally or knowingly cause the sexual organ of [N.H.] to contact the sexual organ of the defendant; and aggravated sexual assault of a child, to-wit: intentionally or knowingly cause the mouth of [N.H.] to contact the sexual organ of the defendant[.]

Trial began on June 7, 2022. At the time of trial, appellant was thirty-nine years old, and N.H. was twelve. After a jury was impaneled, appellant pleaded guilty to the charged offense and signed a stipulation of evidence that was entered into the record. A unitary trial on punishment proceeded.[3]

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] To protect the identity of the minor children, we refer to the children by their initials or an alias. *See* TEX. R. APP. P. 9.8(a); *see also* TEX. CONST. art. 1, §30(a)(1) (providing that a crime victim has "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[3] Once a plea of guilty in a felony case is entered either before a judge or jury, the procedure becomes a "unitary trial" to determine the remaining issue of punishment. *See In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012) (orig. proceeding).

**A.     State's Punishment Evidence**

The State presented several witnesses who established the nature and details of the offense to which appellant pleaded guilty. We summarize the evidence in relevant part below.

On March 1, 2021, N.H. provided a note to Ashley McLain, N.H.'s first period teacher at Alvarado Intermediate School (AIS). At the time, N.H. was in sixth grade and eleven years old. In the note, N.H. wrote, "I just really want to die. I have no reason to live for. I'm tired of suffering. I want to end it all." McLain immediately informed her co-teacher, who walked N.H. to the school counselor's office.

N.H. made an outcry of sexual abuse to the school counselor, Debra Towns. According to Towns, N.H. stated that she did not actually want to die but wanted to end the suffering and the sexual abuse that had been happening with appellant since she was six or seven years old. N.H. explained that on the previous Friday night, appellant had N.H. perform oral sex on him while they traveled the back roads from Burleson, Texas to Alvarado, Texas after having dinner. N.H. stated that this incident was not the first time and that it had happened more than once. N.H. also stated that when her mother was at work or otherwise not home, appellant would lock the bedroom door and put his fingers inside N.H.'s sex organ or his mouth on N.H.'s sex organ. She mentioned she would shower after every instance and that this had happened regularly since she was six or seven years old.

Later that day, N.H. was interviewed by Maria Mendez, a forensic interviewer with the Johnson County Children's Advocacy Center. N.H. identified other specific incidents

3

of abuse to Mendez that occurred in multiple homes N.H. used to live in. The first incident occurred at her former home in Burleson, where appellant made N.H. perform oral sex and instructed her to put her hands on his penis and move them up and down while performing oral sex. According to Mendez, "[N.H.] said that it would stop when a white juice would come out at the top of [appellant's] penis" and that "there were times where [the white juice] would just run down his penis and he would use a towel to wipe it off or there was other times where she would swallow it."

N.H. next told Mendez that appellant made her perform oral sex at her previous home in Joshua, Texas and also began touching N.H.'s genitals. Specifically, N.H. stated that appellant would spit on his fingers and touch her vagina in a circular motion. N.H. also stated that when they lived at her grandmother's home in Alvarado, appellant made video recordings of her on his iPhone and kept the videos in a hidden folder "for memories." Appellant would also have N.H. watch these recorded videos and other pornographic videos from a website on his laptop. N.H. stated that the sexual abuse occurred at least once or twice a week, and sometimes three or four times a week.

Appellant was arrested on the same day while driving in Kansas. Inside appellant's truck, officers found, among other things, appellant's iPhone and SD card. Following the execution of a search warrant, numerous video recordings and pictures were found on appellant's iPhone and SD card which depicted appellant sexually abusing N.H.[4] The oldest picture was taken on December 2019, approximately fourteen months prior to the

---

[4] The record reflects that eight video recordings depicting appellant sexually abusing N.H. were admitted and published to the jury.

date of appellant's arrest, when N.H. was ten years old.

**B.      Appellant's Punishment Evidence**

Appellant presented three witnesses, including Dr. Kimberly Harrison and Dr. Stephen Thorne, licensed psychologists that interviewed and performed psychological and risk evaluations of appellant.

Dr. Harrison diagnosed appellant with "pedophilic disorder nonexclusive type sexually attracted to females." Dr. Harrison defined pedophilia as "individuals who have a sexual attraction to prepubescent children" and that "nonexclusive type means that [appellant] also does have sexual attractions to adults." Dr. Harrison explained that "People who are considered psychopaths or have high levels of psychopathy are generally more likely to re-offend," and concluded that appellant had a "low level of psychopathy." Dr. Harrison further concluded that appellant was in the "very lowest risk category" for committing future sex offenses by the time he would turn sixty years old and would potentially be released from prison. Dr. Harrison stated

> [Appellant will] be in the risk level one which, again, is the very lowest risk category related to that score within—again, looking at huge studies of thousands and thousands of sex offenders, individuals who are at that same risk score, their recidivism rate after five years of release is . . . is less than one percent. So less than one percent of them commit a new sex offense after five years in the community. The ten-year recidivism rate which would be between one and two percent. So, again, individuals with his risk score, when he's in his 60s, at ten years will commit another sex offense only— between one and two percent. So if you have a hundred sex offenders, one or two of them would probably commit another sex offense.

According to Dr. Harrison, appellant expressed remorse for sexually abusing N.H. during the interview and informed her of some sexual experiences he had had as a child. Dr. Thorne similarly concluded that appellant is not a psychopath and that he was in the "very

low risk range" for committing future sex offenses upon release from prison when he would be over the age of sixty.

Appellant sought to have Craig Caudill testify as an expert regarding prison conditions. The State conducted voir dire of Caudill outside the presence of the jury. During voir dire, Caudill testified that he was qualified as an expert because he had served almost twenty-two years inside the Texas prison system as a prison inmate, in eight different prison facilities. Caudill stated that while he was in prison, he participated in, "created[,] and facilitated" programs within the prison system, and was a warden's clerk:

> So when I worked for a warden in multiple places, I was in the administrative office every day all day. So I had access to things and saw and heard things that no other prisoner would see and hear including EAC reports,[5] reactions to security situations, policy discussions, policy changes, daily prison conditions as far as food, laundry, commissary, security, housing, classification. So I learned a lot more than a typical prisoner would know.

Caudill also stated, among other things, that he had formed a nonprofit for the purpose of changing prison conditions and reducing recidivism, that he had consulted with a U.S. representative, and that he had spoken to a Texas state senator's staff about prison conditions. The following exchange occurred:

[The State]: Your time in the prison system is not going to be the same experience as [appellant's] time in the prison system, correct?

[Caudill]: Correct.

[The State]: So you do not have any facts to present to this Court related to [appellant's] future prison time, correct?

---

[5] According to Caudill, EAC is an acronym for "Emergency Action Communication," and EAC reports documented "security issues that happen—breaches of security within a prison system—a prison unit, anything from a riot, to a stabbing, to a murder, to a rape, to any kind of use of force" and contained "officer's reports, video, photo, statements from victims, statements from aggressors. Kind of like a police report."

[Caudill]:        I apologize. That is incorrect, ma'am.

[The State]:      How is it incorrect?

[Caudill]:        Every single day I saw what happens to people who commit different kinds of crimes, whether it be murder, or whether it be child molestation, or anything in between, and how they are treated. And I saw that every single day with my own eyes. I heard it with my own ears. I was part of conversations that people would discuss. Also having the access that I had and the visuals of the EAC reports, I saw with my own eyes pictures of things that happened to people who had those specific kinds of crimes.

. . . .

[The State]:      But again, what you saw is what was your experience in prison, not [appellant's] experience in prison, correct?

[Caudill]:        Correct.

[The State]:      You don't know what his experience is going to be in prison?

[Caudill]:        I can predict it very, very well what anybody's— anybody who's going to go to prison, I can tell you exactly what's going to happen to them regardless of who they are or what their crime is. When somebody walks into prison every single person in that room assesses that man and I can tell you what his future is going to be in that prison without a doubt.

[The State]:      But again—so you're telling us that you know exactly what's going to happen to him when he goes to prison?

[Caudill]:        I know the great possibilities of many different things that could happen to him or anybody else. It's not specific to him. It's specific to anybody with his type of crime or anybody with any other type of crime. So my experience and my expertise is not specific to one individual, it's specific to every individual in the prison

7

system. I've watched it for over two decades, almost half my life.

Caudill also admitted that he had not taught any courses nor had specialized education on prison conditions, other than his personal experiences.

The State objected to Caudill testifying as an expert, arguing that Caudill was not qualified to testify as an expert on prison conditions. The State also objected to Caudill testifying as a "plain old fact witness." Specifically, the State argued that Caudill could only testify regarding his experience and what he saw in prison, which was not relevant to the jury assessing appellant's punishment because "there's nothing that [Caudill] can say that will show exactly what [appellant's] situation will be in prison."

Appellant argued that Caudill was an expert by his experience and knowledge, stating, "We're not asking to have him testify specifically about what's going to happen exactly to [appellant], just general conditions and how people are treated—how sex offenders are treated, et cetera." The trial court pronounced its ruling:

| | |
|---|---|
| [The Court]: | All right. I do not find that Mr. Caudill is an expert. I don't know if you-all want to discuss whether or not he's going to testify in any other fashion. |
| [Appellant]: | Is the Court finding—are you finding that his testimony is not going to be—or couldn't be helpful to the jury in understanding prison conditions, Judge? |
| [The Court]: | I'm finding that he has no qualifications that make him an expert. |
| [Appellant]: | We're not asserting qualification. We're asserting his knowledge and experience which is very clearly part of the consideration under the rule. |

| | |
|---|---|
| [The Court]: | And—you're taking the word expert very, very loosely. I'm also relying on [the State's] opinion that an expert opinion—his expert opinion would not be reliable or relevant as [the State] said in this case. |
| [Appellant]: | Will you allow him to testify about prison conditions as a nonexpert? |
| [The Court]: | I will let you-all discuss what it is you think you may want to do since I'm not going to certify him as an expert, and come back to the Court with what you would like to do. If you have no agreement then we will continue with the hearing. You want to do that now? |
| [Appellant]: | Yes, ma'am. |
| [The State]: | Yes. We would object to his testimony. I'm not sure exactly what—I mean, basically, we would ask for an oral Motion In Limine, I guess, which is kinda what we're doing right now. But we would object to his testimony as not relevant to this case. |
| [The Court]: | All of his testimony, expert or not? |
| [The State]: | Correct. |
| [The Court]: | Response to that. Not expert in a nonexpert— |
| [Appellant]: | Right. Right. Judge, he has extensive experience in prison in multiple units. You know, as he's told you, he had a better bird's-eye view of what was going on all over the prison by virtue of being a warden's assistant. And we would assert that that—his opinion as to general prison conditions could be helpful to the trier of fact in making a determination of how long to send [appellant] to prison. |
| [The Court]: | I found that he is not going to give an expert opinion— |
| [Appellant]: | I understand. |

9

| [The Court]: | —on general prison conditions. I will allow him to testify to his personal experiences if they were relevant, but only his personal experiences and not hearsay because he is not designated as an expert. |
| --- | --- |
| [Appellant]: | And that would include what he saw happening to other people, I would assume. |
| [The Court]: | I will rely on you to not have him testify to hearsay and rely on [the State] to make objections if you do or attempt to. |

In front of the jury, Caudill testified that the general population in prison was placed in "non air-conditioned units"; there was poor heating during the winter months; the quality of food was poor; regular access to water by prisoners is a constant issue; and most prison facilities do not provide outdoor physical recreation for prisoners. Caudill also testified that sex offenders in prison were treated differently in terms of visitation as they were not in the "general population area" but were "roped off and away from the children or other people, other family members." Caudill observed sex offenders be physically assaulted specifically because of their status as sex offenders. Caudill also testified that prison guards informed non-sex offenders who the sex offenders were and that a sex offender in prison was commonly referred to as a "Chomo, which is short for child molester" and a "baby raper."

After the State and appellant presented closing arguments, the jury sentenced appellant to life imprisonment. This appeal followed.

## II. EXCLUSION OF EXPERT TESTIMONY

In his sole issue, appellant argues that the trial court committed harmful error when it prohibited Caudill from testifying as an expert witness.

10

**A.    Standard of Review & Applicable Law**

We review the trial court's determination as to the admissibility of expert testimony for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). Under the abuse-of-discretion standard of review, we will uphold the trial court's decision as long as it was within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

"[T]he admissibility of evidence during 'the punishment phase of a non-capital trial is a function of policy rather than a question of logical relevance.'" *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006) (quoting *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002)). The jury is entitled to consider "any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). "Evidence is 'relevant to sentencing,' within the meaning of [Art. 37.07, § 3(a)] if it is 'helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'" *Beham*, 559 S.W.3d at 479.

Rule of Evidence 702 governs the admissibility of expert testimony. *See* TEX. R. EVID. 702. This rule allows a witness who is "qualified as an expert by knowledge, skill, experience, training or education" to "testify in the form of an opinion or otherwise if his scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Id*. Under Rule 702, three conditions must be met before expert testimony is admissible: (1) the expert must be qualified; (2) the

11

evidence must be reliable; and (3) the evidence must be relevant. *Rhomer*, 569 S.W.3d at 669.

Qualification is evaluated by a review of the expert's training and experience. *Id.* at 672 n.1. The specialized knowledge that qualifies a witness to offer an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a combination of these things. *Id.* at 669. The expert's background must be tailored to the specific area of expertise in which he desires to testify, and the proponent of the expert's testimony has the burden to show that the witness is qualified on the matter in question. *Id.* If a witness has a sufficient background in a particular field, then the trial court must determine whether that background goes to the very matter on which the witness is to give an opinion. *Id.*

An expert does not need to use scientific methods to be qualified, and there is no requirement that the expert's specialized knowledge, training, or experience be based on scientific principles. *Id.* at 670. "That is, with regard to qualifications, there is no litmus test, no particular license or degree that an expert must possess to qualify." *Kingsbury v. State*, 625 S.W.3d 686, 691 (Tex. App.—Fort Worth 2021, no pet.).

A trial court's ruling on the admissibility of expert testimony will rarely be disturbed on appeal: "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers v. State*, 205 S.W.3d 525, 527–28 (Tex. Crim. App. 2006).

**B.  Discussion**

We need not decide whether the trial court erred in denying Caudill to testify as an expert because we conclude that appellant did not suffer harm.

Generally, the erroneous exclusion of evidence offered under the rules of evidence constitutes non-constitutional error and is reviewed under Texas Rule of Appellate Procedure 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). Under Rule 44.2(b), any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). In other words, nonconstitutional error requires reversal only if it affects the substantial rights of the accused. *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Ellis v. State*, 517 S.W.3d 922, 931 (Tex. App.—Fort Worth 2017, no pet.).

In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.* at 518–19. Additionally, the presence of overwhelming evidence of guilt plays a determinative role in this analysis. *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008).

Here, the trial court did not allow Caudill to testify as an expert but allowed him to testify as a lay witness. Appellant argues in his brief that he "experienced difficulty presenting meaningful testimony about the level of violence in prison, and more particularly the level of violence directed at sex offenders, through . . . Caudill as a 'lay witness.'" Though the record demonstrates that the trial court sustained various objections to Caudill's lay testimony lodged by the State, appellant does not argue that those rulings were erroneous on appeal. Furthermore, appellant does not identify what specific testimony regarding "the level of discrimination and violence generally experienced by sex offenders" that Caudill was prohibited from testifying to as a lay witness.

Regardless, the record demonstrates that Caudill testified about various conditions of prison facilities that he had observed while serving his own prison sentence, including how sex offenders are treated differently from the general inmate population. In particular, Caudill observed sex offenders assaulted because they were sex offenders. In addition, Caudill testified that sex offenders were exposed by prison guards and were subject to different treatment regarding visitation. "The test for harm when evidence is excluded is whether there is a reasonable probability that the absence of the evidence might have contributed to the conviction or affected the punishment." *Guerra v. State*, 942 S.W.2d 28, 33 (Tex. App.—Corpus Christi–Edinburg 1996, pet. ref'd) (citing *Bird v. State*, 692 S.W.2d 65, 70, 73 (Tex. Crim. App. 1985)). Though Caudill did not testify about violence directed at sex offenders *as an expert*, the record demonstrates that he was able to testify about such matters as a lay witness. *See id.* ("The standard on exclusion of cumulative

14

evidence and harmless error dictates that no harm results when evidence is excluded if other evidence of substantially the same nature is admitted."); *see also Lopez v. State*, 615 S.W.3d 238, 265 (Tex. App.—El Paso, 2020 pet. ref'd) ("[T]he erroneous admission of evidence is harmless under Texas Rule of Appellate Procedure 44.2(a) where it is cumulative of other evidence admitted at trial."). Thus, appellant has failed to demonstrate how he was harmed by "the absence of the evidence" he sought to introduce. *See Guerra*, 942 S.W.3d at 33.

In addition, the evidence of appellant's guilt was overwhelming. *See Neal*, 256 S.W.3d at 285. (observing that overwhelming evidence of guilt plays a determinative role when conducting analysis for nonconstitutional error under Tex. R. App. P. 44.2(b)). Here, appellant pleaded guilty to the indicted offense. During the punishment phase, the State presented numerous witnesses detailing the sexual abuse that N.H. suffered from appellant. In addition, the State presented evidence that appellant photographed and video-recorded acts of sexual abuse he conducted against N.H. on his iPhone. Assuming without deciding that the trial court erred in prohibiting Caudill from testifying as an expert, such error was harmless in light of the overwhelming evidence of guilt shown by the evidence detailed above. The jury was free to weigh "the circumstances of the offense for which [appellant was] being tried" against his proffered reason for leniency. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). We conclude that any alleged error did not have a substantial and injurious effect or influence in determining the jury's verdict, or affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Proenza*, 541 S.W.3d at 801; *Ellis*, 517 S.W.3d at 931. We overrule appellant's sole issue.

15

###### III. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
16th day of November, 2023.

16