**David Eugene STEWART Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–95–252–CR.**

Court of Appeals of Texas,
Fort Worth.

July 11, 1996.

---

tion was given to the jury and might have been a

factor in the assessment of punishment.

Earl R. Waddell, III, Fort Worth, for Appellant.

Tim Curry, Criminal Dist. Atty., Betty Marshall and Chuck Mallin, Asst. Chiefs of the Appellate Div., John A. Stride, Richard Bland and Lee Wyatt, Assts., Fort Worth, for State.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

## OPINION

CAYCE, Justice.

Appellant David Eugene Stewart was found guilty of the offense of aggravated sexual assault, and the jury assessed punishment at thirty-five years' incarceration. In one point of error, Stewart contends that the trial judge erroneously admitted evidence of an extraneous unadjudicated offense during the punishment phase in violation of TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1996). We affirm.

Because the sufficiency of the evidence is not challenged in this appeal, we will only provide a brief recitation of the facts. On the afternoon of April 8, 1994, the victim, J.A.R., was at a gas station in Azle, Texas, where she met Stewart for the first time. Later that evening, she and Stewart went to three bars. As Stewart was driving J.A.R. home, he invited her to his house to show her some rabbit skins. Stewart sexually assaulted J.A.R. in the house and, after threatening to kill her if she called the police, drove her to the vicinity of her home where he dropped her off.

In his sole point of error, Stewart asserts that the trial court abused its discretion during the punishment stage of trial when it admitted evidence of an unadjudicated extraneous sexual assault that Stewart allegedly committed before his sexual assault on J.A.R. According to Stewart, the alleged extraneous offense was not proved beyond a reasonable doubt as required under article 37.07, section 3(a) before its admission before the jury.

Generally, a trial court has broad discretion to admit or deny evidence and an appellate court should not overturn a trial court's ruling on the admissibility of evidence absent a showing of a clear abuse of discretion. *See, e.g., Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App.1991) (op. on reh'g); *Rivera v. State,* 808 S.W.2d 80, 96 (Tex.Crim.App.), *cert. denied,* 502 U.S. 902, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991). At the punishment stage of trial, the scope of admissible evidence is governed, in part, by article 37.07, section 3(a) of the Texas Code of Criminal Procedure, which provides in pertinent part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged

with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a).

Those courts that have interpreted this recently amended provision have held that the requirement of proof beyond a reasonable doubt is a *preliminary* requirement for the admissibility of the evidence of an extraneous offense. *See Escovedo v. State,* 902 S.W.2d 109, 112–14 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Mitchell v. State,* 892 S.W.2d 213, 215 (Tex.App.—Texarkana 1995, pet. granted). The First Court of Appeals has further held that, not only does a trial court have the burden as a preliminary matter of determining whether the extraneous offense is proved beyond a reasonable doubt before its admission, but it must also instruct the jury on the State's burden of proof in the court's charge. *See Escovedo,* 902 S.W.2d at 112–14.

At the punishment stage of trial in the instant case, the State reoffered the testimony from the guilt/innocence stage and rested. Stewart then presented three witnesses and testified himself in an attempt to persuade the jury to give him probation. After the defense rested, the State requested and obtained a hearing outside the presence of the jury on the admissibility of the prior sexual assault to offer as rebuttal. The State presented three witnesses: Walter "Gator" Weiss, Chief of Police of Pelican Bay; Delores Elizabeth Jones; and T.C.R., the alleged victim of Stewart's extraneous offense.

T.C.R., who was sixteen years old at the time of the alleged extraneous offense, related that she was visiting her father in Pelican Bay near Eagle Mountain Lake in late May or early June 1993. While there, she said she was sexually assaulted. T.C.R.'s voir dire testimony was as follows:

[BY PROSECUTOR]:

Q. Could you tell us—could you move up? Can you tell us your full name?

. . . .

A. [T.C.R.].

. . . .

Q. Does anybody you know live in Pelican Bay?

A. Yes. My father.

Q. And were you visiting him around late May, early June?

A. Yes.

Q. And was that in 1993?

A. Yes, ma'am.

Q. Were you sexually assaulted on—when you were visiting your father?

A. Yes, I was.

Q. And do you recognize the person who sexually assaulted you in the courtroom?

A. No.

Q. Okay. Did you go with—after it happened, did you have an opportunity to see him again?

A. Yes, I did.

Q. And why was that?

A. My uncle took me to the house. I showed him where the van had went.

Q. Who else went with you?

A. My dad came later on.

Q. What's your dad's name?

A. [R.R.].

Q. What's your uncle's name?

A. [T.R.].

Q. And did you see one or two men where your uncles went?

A. I seen two.

Q. And was the man that sexually assaulted you the skinny one or the fatter one?

A. Skinny.

Q. Now, did you—I know you're real nervous. I'm going to ask you again. Have you looked around the courtroom?

A. No.

Q. Okay. I want you to look around the courtroom. I need you to look around the courtroom. I want you to look at everybody.

[T.], do you see the person who sexually assaulted you?

A. Yes.

Q. Is that a yes?

A. Yes.

Q. Okay. I want you—just an article of clothing, what's he wearing?

A. Blue and white shirt.

Q. Is he wearing a coat?

A. No.

[PROSECUTOR]: Your Honor, that's the offer of proof that we would make.

THE COURT: Okay. You may step down.

Delores Elizabeth Jones related that she remembered Stewart visiting her and her husband's trailer in May or June of 1993. Stewart left to purchase some beer—allegedly a five-minute trip—but was absent for an hour or more. About fifteen minutes after he returned, a man entered the trailer and told Delores's husband, Gary, that he needed to talk to him outside the trailer. When Delores went outside, she saw a man pointing a shotgun at Gary's chest. There were two trucks parked close by and, inside one, she could identify another man and a girl. The man holding the gun demanded to speak with the man driving a blue van who had molested his daughter at the lake. Delores told the man that her husband did not drive the blue van, but that Stewart did. Gary then called for Stewart to come outside. Stewart denied molesting the girl, but admitted driving to the lake.

Gator Weiss related that in May or June 1993 he was visited in his office by Stewart. Stewart told him that some men brandishing a gun had accused him of molesting a girl by the lake. Stewart wanted to know what was entailed in filing charges against the men, but he was undecided whether to pursue charges. While Weiss was visiting with Stewart, R.R. showed up and Stewart identified him as one of the men who had approached him outside the Joneses' house.

■ Based on the record of the voir dire testimony, we find that a rational trier of fact could not have found the elements of sexual assault[1] beyond a reasonable doubt as required under article 37.07, section 3(a). Therefore, the trial court erred in making its preliminary determination that the extraneous offense was admissible.[2] However, in applying a harm analysis under TEX. R. APP. P. 81(b)(2), we find the trial court's error harmless beyond a reasonable doubt because T.C.R.'s subsequent testimony before the jury established the offense beyond a reasonable doubt and the jury was instructed to consider the offense only if the State met its burden of proof.

In the jury's presence, T.C.R., Jones, and Weiss recounted the stories they had told the court on voir dire. However, T.C.R. gave a much more detailed account of the extraneous offense than she related on voir dire. She testified that as she was visiting her father at Pelican Bay, she had walked her brother and sister to a friend's house when she decided to walk to a lake dock. On her way to the dock, she had noticed a blue van following her wherever she walked. As she was sitting at the dock, the driver of the van approached her carrying a beer bottle and told her that she "was a very pretty young girl." The driver first began to rub her

---

1. The pertinent elements of sexual assault of a child are as follows:

§ 22.011. Sexual Assault

(a) A person commits an offense if the person:

. . . .

(2) intentionally or knowingly:

(A) causes the penetration of the anus or female sexual organ of a child by any means;

(B) causes the penetration of the mouth of a child by the sexual organ of the actor;

(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or

(D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor.

. . . .

(c) In this section:

(1) "Child" means a person younger than 17 years of age

. . . .

TEX. PENAL CODE ANN. § 22.011 (Vernon 1994 & Supp.1996).

2. In his brief, Stewart also suggests that he should have been allowed to cross-examine T.C.R. on voir dire but that, because T.C.R. "offered no facts on direct examination, [Stewart] was not harmed by the lack of cross-examination and thus does not raise this violation of his constitutional right to confront the witness." Furthermore, the record reflects that Stewart was subsequently permitted to cross-examine T.C.R. in the presence of the jury. We, therefore, find it unnecessary to address the issue of whether Stewart should have been permitted to cross-examine T.C.R. during the hearing conducted outside of the jury's presence.

shoulders. Next, he reached under her clothes and touched her breasts. When he began to touch her around her shorts, she moved away but he followed her to the end of the docks.

On the bank and in some tall weeds, T.C.R. testified that the perpetrator held her down, pulled off her shorts, and put his penis "inside" her vagina. Afterwards, he told her "not to tell anyone or he'd kill [her]." During the assault, he threatened her with a broken bottle and told her that he would cut her throat. Eventually, he instructed her to wait and drove away in the van.

She later told her uncle and her father that she had been "messed with," showed them where the blue van had driven, and identified Stewart at the Joneses' house. T.C.R. also identified Stewart as the perpetrator during her testimony in court.

The jury was instructed, without objection, as follows:

> You may consider evidence of an extraneous crime or bad act in assessing punishment even if the Defendant has not yet been charged with or finally convicted of the crime or act. *However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the Defendant or is one for which the Defendant could be held criminally responsible.*
>
> The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. *The prosecution's proof must exclude all "reasonable doubt" concerning the extraneous crime or bad act.*
>
> A "reasonable doubt" is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without

hesitation in the most important of your own affairs.

> *Therefore, if you find and believe beyond a reasonable doubt that the Defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the Defendant's punishment.* However, if you have a reasonable doubt that the Defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment. [Emphasis supplied.]

In view of this instruction on the State's burden of proof, we find that Stewart could not have possibly suffered any harm from the trial court's error in admitting the extraneous offense on the basis of the evidence presented outside the jury's presence, because the offense was proved beyond a reasonable doubt in the presence of the jury. We, therefore, hold that the requirements of article 37.07, section 3(a) were met in this case.[3] Stewart's point of error is overruled.

The judgment of the trial court is affirmed.

---

**3.** Neither party to this appeal challenged the propriety of instructing the jury to make the reasonable doubt determination after the preliminary determination had been made by the trial court. We, therefore, reserve this question for future resolution.