TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00016-CR







Ramon Salazar, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-94-0484-S, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING







PER CURIAM

 A jury found Ramon Salazar guilty of murder and imposed a sentence of thirty-five years
in prison. He appeals by two points of error, contending that the trial court erred by admitting testimony
about extraneous offenses and by failing to instruct the jury that, before it could consider extraneous acts
with regard to guilt and punishment, it must find beyond a reasonable doubt that Salazar committed the acts. 
We will affirm the conviction and punishment.

 Salazar does not challenge the sufficiency of the evidence to support his conviction. We
set forth some of the salient facts to properly frame the issues presented. On August 3, 1995, Rodney
Taylor began fighting Xavier Martinez on the street where Salazar lived. Seeing the fight, Salazar retrieved
a pistol from his car and ran to the fight. When he arrived, Taylor was on top of Martinez on the ground. 
Here, the testimony conflicts; Martinez may have called for help, Salazar may have warned Taylor, and
Salazar may have tried to pull Taylor off of Martinez. There is no dispute that Salazar shot Taylor in the
back, killing him.

 Salazar ran and hid at Martinez's house. He cut his hair to avoid detection. He dismantled
the gun and his family threw the pieces into a creek bed in another county. When arrested, he signed a
voluntary written statement admitting he shot Taylor, but claiming defense of third persons--a defense he
used at trial.

 He was released on personal recognizance bond on December 16, 1994 with electronic
monitoring. On January 9, his community supervision officer called to tell him his monitoring unit was in
tamper mode. That same day, Salazar failed to appear for a meeting with the officer and for the scheduled
pretrial court appearance. He disappeared for almost a month. He did not turn himself in despite his
mother's urging.

 On February 8, 1995, a citizen told a patrolling sheriff's deputy that a man was walking
down a rural road with what looked to be a shotgun under his coat. When the deputy found the man and
stopped the patrol car to investigate, the man started to walk away across the road. The man kept one
hand, fumbling, under his coat, but offered no other resistance. The deputy recognized the man as Salazar
and knew he was the subject of an outstanding murder warrant. When the deputy, concerned for his own
safety, drew his gun, Salazar finally withdrew his hand from his coat. Salazar was carrying a loaded sawed-off shotgun and wearing a bandolier of shotgun ammunition; the coat pocket had a hole that allowed him
access to the shotgun.

 Salazar contends by his first point of error that the trial court erred in allowing testimony
regarding extraneous acts in violation of Texas Rules of Criminal Evidence 403 and 404. He complains
of testimony regarding the following events occurring after Salazar was released from jail in December: his
electronic monitoring system showing tamper mode, his failure to appear for the pretrial hearing that same
day, and his arrest while carrying a loaded shotgun and wearing a bandolier of shotgun shells. Salazar
contends that the evidence should have been excluded because it was evidence of other crimes, wrongs,
or acts intended to prove character conformity (Rule 404(b)) or because its probative value was
substantially outweighed by the danger of unfair prejudice (Rule 403).

 We review for an abuse of discretion the trial court's decision. Montgomery v. State, 810
S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g). We review the trial court's implementation of
a three-part analysis. Id. at 386. We examine whether the evidence is relevant to a material issue in the
case, whether it has relevance beyond proof of criminal propensity, and whether the probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury,
delay, or needless repetition of evidence. Id. at 387-90.

 We will look at the first two steps together. Relevant evidence is that which tends to make
the existence of a consequential fact more or less probable than without the evidence. Tex. R. Crim. Evid.
401. When deciding whether to admit evidence under Rule 404(b), the court must decide whether the
evidence serves some purpose other than character conformity to make the existence of a fact or
consequence more or less probable than it would be without the evidence. Montgomery, 810 S.W.2d
at 391. We will disturb a trial court's ruling only if we can say with confidence that the trial court's decision
is not correct by any reasonable perception of common experience. Id. Each of the objected-to instances
shows flight, which tends to show awareness of guilt. See Colella v. State, 915 S.W.2d 834, 839 (Tex.
Cr. App. 1995). The incidents involving the monitoring device and the failure to appear show flight from
the consequences of the crime here; the circumstances of his arrest on the roadside show the same, albeit
further removed from the immediate flight. We will not disturb the court's ruling that this evidence was
relevant and showed something other than criminal propensity.

 Nor will we overturn the trial court's assessment that the probative value was not
substantially outweighed by the danger of unfairness. Criteria indicating that the evidence should be
excluded under Rule 403 include that the ultimate issue was not seriously contested by the opponent, that
the State had other convincing evidence to establish the ultimate issue, that the probative value of the
misconduct evidence was not particularly compelling, and that a limiting instruction would not have been
effective. Montgomery, 810 S.W.2d at 392-93. Though Salazar admitted he killed Taylor, he insisted
consistently that he did it in defense of a third party; evidence of flight undermines the apparent strength of
his belief in that defense. This evidence helped the State establish his state of mind--critical to both proving
the crime and defeating his defense. While certainly not convincing alone to prove the murder charge, the
extraneous acts were somewhat persuasive of guilt, particularly when considered together with other
evidence. Further, the risk of unfair prejudice is minimal. None of the extraneous acts was flagrant enough
alone to prejudice a jury or persuade them of his criminal propensity. If anything, the incident at his arrest
shows him less likely to commit murder generally; he was alone with a deputy, had his hand on or near a
loaded shotgun, and yet did not try to shoot or escape. We will not disturb the trial court's assessment that
the probative value was not substantially outweighed by the risk of unfairness. We overrule point one.

 Salazar contends by his second point of error that the trial court should have instructed the
jury that, before it could consider extraneous offenses in assessing punishment, it must find beyond a
reasonable doubt that he committed the extraneous offenses. The court must give that instruction when
requested by the defendant. George v. State, 890 S.W.2d 73, 76 (Tex. Crim. App. 1995)
(guilt/innocence); Mitchell v. State, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996) (punishment). Salazar,
however, admits that he did not request an instruction or object to its absence. It is not clear what the trial
court is required to do in the absence of a request or objection. Smith v. State, 899 S.W.2d 31, 35 (Tex.
App.--Austin 1995, pet ref'd). As in Smith, assuming without deciding that the failure to sua sponte give
the instruction is error, we will examine for egregious harm. Id. (citing Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The failure to give the instruction, therefore, does not
necessarily lead to reversal. Escovedo v. State, 902 S.W.2d 109, 114-15 (Tex. App.--Houston [1st
Dist.] 1995, no pet.). We will reverse only if the error was egregious and created such harm that it
deprived Salazar of a fair and impartial trial. Tex. Code Crim. Proc. Ann. art. 36.19; Almanza, 686
S.W.2d at 171. We assay the degree of harm in light of the entire jury charge, the state of the evidence
(including the contested issues and weight of probative evidence), the argument of counsel, and any other
relevant information revealed by the record of the trial as a whole. Id.

 We do not find egregious harm. Salazar does not complain about the remainder of the
charge. Though Salazar contends that the constitution requires that he not be convicted except by proof
beyond a reasonable doubt, the jury charge did not violate that tenet; it contained the standard reasonable
doubt instruction regarding the murder charge. There was overwhelming evidence that he killed Taylor;
the only dispute was whether he killed defending a third party. Even as regards the extraneous acts,
Salazar does not contend that he did not commit them; he disputes only the legality of carrying a shotgun,
and the deputy admitted on the stand that carrying a shotgun under a coat was not illegal and that Salazar
was not charged with an offense. There is absolutely no showing that the jury had any reason not to find
beyond a reasonable doubt that he took the extraneous actions about which he complains. The range of
punishment was five to ninety-nine years; the jurors refused probation and assessed thirty-five years. We
find that the absence of the instruction did not deprive Salazar of a fair trial. Even assuming that the failure
to give the instruction at guilt/innocence or punishment was error, we find no egregious harm and overrule
point two.

 We affirm the judgment and punishment.


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: March 27, 1997

Do Not Publish



issue was not seriously contested by the opponent, that
the State had other convincing evidence to establish the ultimate issue, that the probative value of the
misconduct evidence was not particularly compelling, and that a limiting instruction would not have been
effective. Montgomery, 810 S.W.2d at 392-93. Though Salazar admitted he killed Taylor, he insisted
consistently that he did it in defense of a third party; evidence of flight undermines the apparent strength of
his belief in that defense. This evidence helped the State establish his state of mind--critical to both proving
the crime and defeating his defense. While certainly not convincing alone to prove the murder charge, the
extraneous acts were somewhat persuasive of guilt, particularly when considered together with other
evidence. Further, the risk of unfair prejudice is minimal. None of the extraneous acts was flagrant enough
alone to prejudice a jury or persuade them of his criminal propensity. If anything, the incident at his arrest
shows him less likely to commit murder generally; he was alone with a deputy, had his hand on or near a
loaded shotgun, and yet did not try to shoot or escape. We will not disturb the trial court's assessment that
the probative value was not substantially outweighed by the risk of unfairness. We overrule point one.

 Salazar contends by his second point of error that the trial court should have instructed the
jury that, before it could consider extraneous offenses in assessing punishment, it must find beyond a
reasonable doubt that he committed the extraneous offenses. The court must give that instruction when
requested by the defendant. George v. State, 890 S.W.2d 73, 76 (Tex. Crim. App. 1995)
(guilt/innocence); Mitchell v. State, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996) (punishment). Salazar,
however, admits that he did not request an instruction or object to its absence. I