Affirmed and Memorandum Opinion filed October 13, 2005















Affirmed and Memorandum Opinion filed October 13,
2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01042-CR

____________

 

ELLIOTTE GERARD
JAMES,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County,
Texas

Trial Court Cause No. 957,546

 



 

M E M O R A N D U M    O P I N I O N

A jury found appellant Elliotte Gerard
James guilty of aggravated sexual assault and assessed punishment at life imprisonment
and a $10,000 fine.  In his sole issue,
appellant challenges the factual sufficiency of the evidence supporting his
conviction.  We affirm.








On June 28, 2003,
S.B., the victim in this case, attended a nighttime parade on Westheimer Street
in Houston.  At about 9:30 p.m., S.B., who was alone,
began walking several blocks to a downtown bus stop to catch the last bus home,
which left at 11:05 p.m.  As S.B. walked,
appellant approached her and attempted to engage her in conversation, to which
S.B. responded politely but minimally. 
S.B. avoided eye contact with appellant but observed that he was a black
man wearing an open shirt with a distinct tattoo across his chest and had a
small gauze patch on the right side of his face.  As appellant continued to walk with S.B., he
began asking sexually-oriented questions, such as when she last had sex, which
she laughed off and said she could not remember.  After walking further, S.B. noticed that it
was around 11:10 p.m. and told appellant she had missed her bus.  Appellant told S.B. he would take her to a
nearby gas station where she could call a cab and began directing her where to
walk, repeatedly saying, A[W]alk this way.  It=s just a little
farther.  Just walk this way.@  As appellant and S.B. passed a dimly-lit
vacant lot, appellant struck S.B. in the head and pushed her face-down on the
ground.  Appellant brandished a knife,
warned S.B. that he would kill her if she screamed, and demanded her jewelry.  He bound S.B.=s hands and feet
with straps he cut from her bag and then cut through the back of her jeans and
underwear with his knife.  Appellant told
S.B. that Asince [she] couldn=t remember the
last time [she] had sex, [she] was going to remember this@ and proceeded to
anally rape her.  After he finished,
appellant left with S.B.=s jewelry and backpack.  S.B. subsequently freed herself, ran to a
nearby apartment building, and screamed for help.  Apartment residents called the police, who
took S.B. to the hospital for a sexual assault examination.  S.B. later described appellant and sketched
his chest tattoo for the police. 

About a month after the assault, the
police asked S.B. to come to the station for a lineup.  At the five-person lineup, S.B. described a Afunny vibe@ and a funny
feeling in her stomach when appellant entered, and she asked police to have the
subjects recite the phrase, AJust walk this
way; it=s just a little
farther.@ S.B. did not
react to the other subjects, but when appellant spoke she fell to her knees and
told the police that was him.  S.B. said
that after hearing appellant, she began crying and had to leave the
building.  








At trial, S.B. indicated she could still
hear appellant=s voice and knew it very well.  She testified that she was one hundred percent
certain appellant was her assailant based on his voice and the Afeeling@ she had when he
entered the lineup room.  Although S.B.
did not identify appellant at trial, she identified a photograph of his tattoo
as the one she had seen on her assailant. 
Sergeant D.O. Morgan, who was present at the lineup, confirmed that the
photograph was of appellant=s tattoo and
identified him for the jury.

In conducting a factual-sufficiency review
of the jury=s determination, we do not view the
evidence Ain the light most favorable to the
prosecution.@  Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Instead, we view the evidence in a neutral
light and inquire whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex.
Crim. App. 2004).  We may find the
verdict factually insufficient in two ways. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.  Id.  Second, after weighing the evidence
supporting the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id.
at 484B85. 
We must discuss the evidence appellant claims is the most important in
allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003).  However, we must employ
appropriate deference so that we do not substitute our judgment for that of the
fact-finder.  Zuniga, 144 S.W.3d
at 482.  Our evaluation should not
intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  Cain, 958 S.W.2d at 408B09.

In his sole issue, appellant asserts that
the evidence is Aso weak as to be factually insufficient to
sustain the conviction.@ 
Specifically, appellant contends that the evidence is insufficient to
identify appellant as S.B.=s assailant.








In Texas,
voice identification is considered direct evidence and is sufficient to
identify the defendant as the person who committed the crime, even without
facial recognition.  See McInturf v.
State, 544 S.W.2d 417, 419 (Tex. Crim. App. 1976) (holding that voice
identification constitutes direct evidence); Reyes v. State, No.
14-00-01388-CR, 2002 WL 58836, at *6 (Tex. App.CHouston [14th
Dist.] Jan. 17, 2002, no pet.) (not designated for publication) (AVoice
identification, based on the perpetrator=s statements
during the criminal episode, is sufficient to identify the defendant.@).  Although S.B. did not clearly see appellant=s face, she
testified that she heard his voice as they walked a number of blocks and as he
directed her where to walk.  Appellant
spoke continually during the estimated hour or more he spent with S.B. and also
spoke to her during the assault.  S.B.
testified to her reaction after hearing appellant=s voice at the
lineup, which was corroborated by Sergeant Morgan=s trial testimony,
and she said she was certain appellant was her assailant.  Based on the strength of the State=s evidence, the
jury could have found beyond a reasonable doubt that appellant was S.B.=s assailant.  See McInturf, 544 S.W.2d at 418B19 (affirming
conviction without physical evidence where victim was blindfolded but heard rapist
speak for half an hour and later identified his voice); Ward v. State,
505 S.W.2d 832, 834B35 (Tex. Crim. App. 1974) (approving
identification where after hearing appellant=s voice in lineup
victim Abroke down and
started crying because she stated that she knew that was the man who raped her@); Williams v.
State, 850 S.W.2d 784, 785B87 (Tex. App.CHouston [14th
Dist.] 1993) (affirming conviction for telephone harassment based in part on
voice identification from two separate phone conversations), aff=d,  895 S.W.2d 363 (Tex. Crim. App. 1994). 








Appellant points to evidence that S.B.=s description of
his tattoos and bandage on his face was not completely accurate.  Specifically, appellant claims S.B.
erroneously described his chest tattoo as running diagonally instead of in a Apaw print@ pattern and said
he was wearing gauze on the right side of his face whereas the only indication
of a need for a facial bandage is a small tattoo on the left side of his
face.  Some inaccuracies in a witness=s description do
not automatically render the evidence insufficient.  See Escovedo v. State, 902 S.W.2d 109,
115 (Tex. App.CHouston [1st Dist.] 1995, pet. ref=d).  Rather, such details are for the jury to
consider in assessing the credibility of a witness.  Id.  Appellant also complains that the State did
not tie him to the assault through either DNA evidence or S.B.=s stolen
property.  Such direct physical evidence
is not necessary when the victim=s testimony
sufficiently supports conviction.  See
Harmon v. State, 167 S.W.3d 610, 614 (Tex. App.CHouston [14th
Dist.] 2005, no pet. h.).  Here, that
includes not only S.B.=s identification of appellant=s voice and
description of his tattoos, but also her estimate of his age, height, and
weight.[1]  Appellant further contends that the police
lineup may have been suggestive but does not raise this as a separate issue.[2]  Accordingly, we review only the factual
sufficiency of the evidence before the jury. 
Finally, appellant argues that his lack of prior sexual offenses in his
history of five felony convictions weakens the evidence against him.  However, we disagree with appellant=s contention that
the lack of a prior sexual offense undermines the State=s case.  

We conclude the evidence is factually
sufficient to identify appellant as S.B.=s assailant.  Accordingly, we overrule appellant=s sole issue and
affirm the trial court=s judgment.

 

 

                                                              

 

/s/      Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered and Opinion filed October 13, 2005.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  S.B. described
her assailant as about 34 years old, between 5'9"and 6' tall and 150 and
160 lbs.  At the time of the assault, appellant
was 37 years old and 5'11" tall. 
His weight at arrest was 172 lbs. 





[2]  Appellant
suggests that the Afunny vibe@ S.B.
described at the lineup may have been the product of Apolice transmitt[ing] a variety of subconscious
signals@ to her.  He
also points to a lost videotape of the lineup and questions whether lineup
subjects adequately covered their tattoos. 
In support of his contention, appellant argues that several still
photographs taken after the lineup show that subjects may have worn short sleeves,
thus exposing appellant=s arm tattoos and causing him to stand out among the
lineup subjects.  However, the State
introduced testimonial evidence about the lineup, including S.B.=s testimony that she did not see tattoos on any lineup
subject and Sergeant Morgan=s testimony that lineup subjects wore long sleeves
during the lineup and before the still photographs were taken.