Affirmed and Memorandum Opinion filed April 13, 2006









Affirmed
and Memorandum Opinion filed April 13, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00122-CR

____________

 

TANGINA RACHELL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 975,462

 



 

M E M O R A N D U M  O P I N I O N

Appellant Tangina Rachell challenges her
conviction for aggravated sexual assault of a child asserting as grounds for
reversal factual insufficiency of the evidence, 
jury charge error, and the erroneous admission of hearsay
testimony.  We affirm. 

I.  Factual and Procedural Background








On January 13, 2004, around 7:00 a.m.,
Deputy McNabb with the Harris County Sheriff=s Department
responded to a sexualBassault call.   When he arrived at the scene, he found a
young African-American girl in the back of an ambulance.  Deputy McNabb stated that the young girl,
wearing a backpack, had messy hair and ripped pants.  Deputy McNabb then talked to the complainant,
identified as A.C., and learned that she was eleven years old.   A.C. told Deputy McNabb a very detailed and
elaborate story about how she was abducted, while walking home from school, by
two white men in a purple van.  She told
Deputy McNabb that there was another little girl in the van engaged in sex with
one of the men.  A.C.  described how the other man took off her
pants, put on a condom, and said, AWe=re going to get
groovy.@   A.C. told Deputy McNabb that she kicked him
when he began to rub his penis on her, which caused both men to run from the
van.  A.C. claimed that she was somehow
able to escape and run to a friend=s house a couple
of blocks away. 

A.C.=s father
testified  that when he arrived at home
on January 13, 2004, A.C. was not home. 
He was concerned because his oldest stepdaughter was already home and it
was not typical for A.C. to arrive home after her stepsister.  After driving around the neighborhood and
failing to locate A.C., he called the 
Harris County Sheriff=s Department and
A.C.=s mother.  The following morning, A.C.=s father was
called to come and retrieve A.C., who was at the fire station.  When he arrived and saw A.C., he felt as
though she had been through Asomething.@  A.C.=s father, his
wife, and A.C. then sat down with Deputy Ackley, an investigator assigned to
the Harris County Sheriff=s Department=s Child Abuse
Division.   When asked what had happened
to her, A.C. repeated the version of events she had given the previous
day.  Her father said A.C. was lying and
demanded the truth, which prompted A.C. to give a different account, one she
also gave at trial.  








A.C. told her father and Deputy Ackley
that she called her mother because she had gotten in trouble with changing her
grades at school.  The following day
after school, her mother, Loretta Maxie waited for A.C. at the end of the
street (near the home where A.C. lived with her father).  A.C. testified that they then walked for
about five minutes until they arrived at another school where appellant, her
mother=s friend, was
waiting in a red car.   They drove to
A.C.=s home, where
Maxie picked up her car, a green Taurus, which she had left parked in front of
A.C.=s home.[1]  Maxie followed her daughter and appellant to
the Haverstock Apartments, where Maxie lived with appellant.  Maxie told A.C. that her father did not love
her and she was going to take him back to court to regain custody of A.C.  A.C. testified that her mother then cut her
clothes with scissors and ripped her clothes to make it look like two men raped
her.  A.C. stated that appellant
instructed Maxie to put her finger inside of A.C. to make it look like sexual
assault.  A.C. told her mother that it
was not a good idea and she should just try to work out her issues with A.C.=s father.   A.C. then stated that appellant told Maxie
that if she did not do it, appellant was going to Apitch@ Maxie out of the
apartment.  Maxie then replied, AAnything for you
baby.@  A.C. testified that her mother, upon this
comment, stuck a finger in A.C.=s Aprivacy part@ and it hurt.  A.C. 
said appellant sat on the side of the bed and smiled  at her mother as this happened. 

A.C. testified that her mother left the
room, came back with a black trash bag, and instructed A.C. to get inside of
the bag.  A.C. complied and Maxie cut a
breathing hole in the bag.  Maxie and
appellant then picked A.C. up and put her on a shelf in the closet until the
following morning.  After releasing A.C.
from the closet, Maxie dropped A.C. off at A.C.=s friend=s house and
instructed A.C. to call the police and tell them that two men in a purple and
pink van had assaulted her. 

Appellant testified that neither she nor
Maxie picked A.C. up on January 13, 2004. She further testified, as Dennis
Maxie (A.C.=s half-brother) did, that it was Dennis=s birthday that
day and they had cake and dinner in the apartment that evening.   Both appellant and Dennis Maxie testified
that A.C. was not in the apartment that night. 
Appellant further denied telling Deputy Womack (the officer called to
search the apartment the night A.C. was reported missing) that one of the
closet doors was locked and had never been opened. 








A jury found appellant guilty of the
felony offense of aggravated sexual assault of a child and assessed punishment
at six years= confinement in the Texas Department of
Criminal Justice, Institutional Division. 

II. 
Issues Presented

Appellant asserts the following issues on
appeal: 

(1)     The
evidence is factually insufficient to support the conviction of aggravated
sexual assault of a child. (Issue 4)

(2)     Appellant
was egregiously harmed by the lack of jury instructions in regard to extraneous
offenses and badBact evidence in the punishment jury
charge. (Issue 1)

(3)     Appellant
was egregiously harmed by the lack of jury instructions in regard to the use of
notes by the jury during deliberations in the punishment phase of the trial.
(Issue 2)

(4)     The
trial court abused its discretion by overruling appellant=s objection to the hearsay
testimony in regard to Maxie=s statements to the police. (Issue 3)

 

III.  Analysis


 

A.      Is the evidence factually sufficient to
support appellant=s conviction for aggravated sexual
assault? 

 








We first address
appellant=s fourth issue in which she contends that
the evidence is factually insufficient to support her conviction of aggravated
sexual assault. When evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether the
trier of fact was rationally justified in finding guilt beyond a reasonable
doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  A reviewing court may find the evidence
factually insufficient in two ways. Id. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.
Id. Second, after weighing the evidence supporting the verdict and the
evidence contrary to the verdict, the contrary evidence may be strong enough
that the beyond‑a‑reasonable‑doubt standard could not have
been met. Id. at 484B85.  In conducting the factual‑sufficiency
review, we must employ appropriate deference so that we do not substitute our
judgment for that of the fact finder.  Id.
at 481B82.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the weight and
credibility given to any witness=s testimony.
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  In conducting a factual‑sufficiency
review, we must discuss the evidence appellant claims is most important in
allegedly undermining the verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).

A person commits
the offense of aggravated sexual assault if the person intentionally or
knowingly: (i) causes the penetration of the anus or female sexual organ of a
child by any means.  Tex. Penal Code Ann. ' 22.021 (Vernon
Supp. 2005) (emphasis added). Moreover, a person is criminally responsible as a
party to an offense if the offense is committed by her own conduct, by the
conduct of another for which she is criminally responsible, or by both. See Tex. Pen. Code Ann. ' 7.01 (Vernon
2003).   Under section 7.02(a)(2), a
person is criminally responsible for an offense committed by the conduct of
another if: (1) acting with the kind of culpability required for the offense,
she causes or aids an innocent or non-responsible person to engage in conduct
prohibited by the definition of the offense;(2) acting with intent to promote
or assist the commission of the offense, she solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense; or (3) having
a legal duty to prevent commission of the offense and acting with intent to
promote or assist its commission, she fails to make a reasonable effort to
prevent commission of the offense.  Tex. Pen. Code Ann. ' 7.02(a) (Vernon
Supp. 2005) (emphasis added).  In
addition, presence at a crime is a circumstance tending to prove guilt which,
when combined with other facts, may suffice to show that an accused was a
participant in the crime. Ortiz v. State, 577 S.W.2d 246 (Tex. Crim.
App. 1979).








Although A.C.
admitted to not being truthful in her initial account to law enforcement, she
testified at trial under oath as to what she claimed really happened to her the
night of January 13, 2004.  A.C.
testified that  her mother cut and ripped
her clothing to make it look like she had been raped.  A.C. stated that appellant then instructed
Maxie to put her finger inside of A.C. to make it look like sexual
assault.  When A.C. tried to
persuade  her mother that the ruse was
not a good idea and she should just try and work things out with A.C.=s father,
appellant intervened, telling Maxie that if she did not do it, appellant was
going to Apitch@ her out of the
apartment.  Maxie replied, AAnything for you
baby.@  A.C. testified that her mother, upon hearing
this comment from appellant, stuck a finger in A.C.=s  Aprivacy part@ and it hurt.  A.C. further stated that during this time,
appellant was sitting on the side of the bed smiling at her mother. 

A.C. further
testified that her mother then instructed her to get inside a black trash bag.
After Maxie cut a hole in the bag so that A.C. could breathe, she and appellant
picked A.C. up and put her on a shelf in the closet until the following
morning.  A.C. stated that her mother
then dropped her off at A.C.=s friend=s house and told
A.C. to call the police and report that two men in a purple and pink van had
raped her.  All of this testimony was
provided by A.C. herself and demonstrates that appellant encouraged, aided, and
directed the sexual acts.  See
Thompson v. State, 697 S.W.2d 413, 416 (Tex. Crim. App. 1985).

Appellant asks us
to reverse her conviction because the State did not offer physical evidence to
corroborate A.C.=s testimony and because appellant states
that her testimony and Dennis Maxie=s testimony that
A.C.  was not in the apartment on January
13, 2004 undermines the verdict. 
Appellant further states that when Deputy Womack searched the apartment,
he did not find A.C.  This evidence,
however, does not explain Deputy Womack=s testimony that
the closet was locked, and A.C.=s own testimony
that she was placed on a shelf in that closet until the following morning. 








We note that
the  jury is the exclusive judge of the
credibility of the witnesses and of the weight to be given their testimony.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000).  A.C., who was
twelve years old when she testified, stated that she knew the difference
between telling the truth and telling a lie, and that she understood how
important it was for her to tell the truth. 
On cross-examination, A .C. repeatedly stated that she was not lying.
The jury, as the factfinder, could have believed A.C.=s testimony and
wholly disbelieved any of the defense=s evidence,
including appellant=s own testimony.  See Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986); Marc v. State, 166 S.W.3d 767 (Tex. App.BFort Worth 2005,
pet. ref=d)  (holding that jury could have believed victim
so as to support conviction for aggravated sexual assault even though defendant
argued that the victim=s veracity was suspect because she was a
prostitute and drug addict and convicted felon); Sanders v. State, 834
S.W.2d 447, 449 (Tex. App.BCorpus Christi
1992, no pet.). Furthermore, the testimony of A.C, standing alone, is
sufficient to support appellant=s conviction of
aggravated sexual assault of a child.  See
Tex. Code Crim. Proc. Ann.
art. 38.07; see Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.BHouston [14th
Dist.] 2002, pet. ref=d) (stating that the testimony of a
victim, standing alone, even when the victim is a child, is sufficient to
support a conviction for sexual assault); see also Satterwhite v. State, 499
S.W.2d 314, 315 (Tex. Crim. App. 1973) (holding that victim=s testimony that
appellant placed Ahis male organ into her private parts@ was sufficient to
sustain conviction); West v. State, 121 S.W.3d 95, 111 (Tex. App.BFort Worth 2003,
pet. ref=d) (stating that
victim=s testimony is
sufficient to sustain conviction of sexual assault); Kimberlin v. State,
877 S.W.2d 828, 831 (Tex. App.BFort Worth 1994,
pet. ref'd) (holding that a child victim=s outcry statement
alone can be sufficient to support a conviction for aggravated sexual assault);
Butler v. State, 875 S.W.2d 804, 806 (Tex. App.BBeaumont 1994, no
pet.) (finding that scientific and other corroborating evidence was not
required for aggravated sexual assault given that victim told her niece of the
sexual assault only hours after the attack). We conclude the evidence is
factually sufficient to support appellant=s conviction for
aggravated sexual assault of a child. Accordingly, we overrule appellant=s fourth issue.

B.      Was appellant egregiously harmed by the
lack of jury instructions in regard to alleged extraneous offenses and bad act
evidence in the punishment phase jury charge?

 








In her first
issue, appellant contends that, in the punishment phase, she was egregiously
harmed by the omission in the jury charge of a beyondBaBreasonableBdoubt instruction
regarding extraneous offenses and badBact evidence.  Appellant asserts that this instruction was
necessary based on evidence that she may have placed A.C. in a trash bag and
forced A.C. to spend the night on a shelf in a closet, and evidence that
appellant and Maxie had been involved in a romantic relationship. 

The State contends
that appellant failed to object to the trial court=s omission of a
reasonableBdoubt instruction in the punishmentBphase charge and
she was not egregiously harmed by the lack of such an instruction.  Moreover, the State contends that appellant
was not entitled to a reasonableBdoubt instruction
in the punishmentBphase charge regarding alleged extraneous
badBact evidence
because such evidence was admissible during the guilt-innocence phase as
same-transaction evidence.   Appellant
does not dispute that she  failed to
assert these objections at trial. 

When an appellant
alleges jury charge error on appeal, our first task is to determine whether
error actually exists in the charge. Hutch v. State, 922 S.W.2d 166, 170
(Tex. Crim. App. 1996); Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984).   If there is juryBcharge error, we
then must determine if the error caused sufficient harm to warrant reversal. Hutch,
922 S.W.2d at 170B71; Almanza, 686 S.W.2d at
171.  Preservation of charge error does
not become an issue until we assess harm.  Ngo v. State, 175 S.W.3d 738, 743 (Tex.
Crim. App. 2005).  The degree of harm
necessary for reversal depends on whether the appellant preserved the error by
objection.  Id.  When the defendant fails to object or states
that she has no objection to the charge, we will not reverse for jury‑charge
error unless the record shows egregious harm to the defendant. Id. at
743‑44; Almanza, 686 S.W.2d at 171. 

Egregious harm
occurs  when an error affects the very
basis of a case, deprives the defendant of a valuable right, vitally affects a
defense theory, or makes the case for punishment clearly and significantly more
persuasive.   Mathews v. State,
999 S.W.2d 563, 565 (Tex. App.BHouston [14th
Dist.] 2000, pet. ref=d). 
The reviewing court must determine the actual harm in light of the
entire jury charge, the state of the evidence, including contested issues and
weight of probative evidence, the arguments of counsel, and any other relevant
information revealed by the record.  Almanza,
686 S.W.2d at 171.








ExtraneousBoffense evidence,
which is indivisibly connected to the charged offense, may be admissible to
provide context for the offense.   Lockhart v. State, 847 S.W.2d 568, 571
(Tex. Crim. App. 1992); Mayes v. State, 816 S.W.2d 79, 86‑87 n. 4
(Tex. Crim. App. 1991).  Where an offense
is one continuous transaction, or is closely interwoven with the case on trial,
proof of all such facts is proper.  Mayes,
816 S.W.2d at 87.   Evidence
of these extraneous offenses is admissible to show the context in which the
criminal act occurred.  Id.  This context permits the jury to
realistically evaluate the evidence because Acrimes do not
occur in a vacuum.@  Wilkerson v. State, 874 S.W.2d 127, 131
(Tex. App.BHouston [14th Dist.] 1994, pet. ref=d).

Because the
evidence that appellant may have placed A.C. in a trash bag and forced A.C. to
spend the night on a shelf in a closet was part of the same criminal
transaction as the charged offense, this evidence was properly admitted as sameBtransaction
contextual evidence.  See Nelson v.
State, 864 S.W.2d 496, 498‑99 (Tex. Crim. App.1993); Lockhart, 847
S.W.2d at 571.  When evidence is admitted
as sameBtransaction
contextual evidence, no limiting instruction is required.  See Camacho v. State, 864 S.W.2d 524, 532
(Tex. Crim. App. 1993).  Thus, because
the sameBtransaction
contextual evidence is offered simply to explain the context of the crime, a
jury instruction, requiring extraneous offenses be proven beyond a reasonable
doubt, is not required. See Garza v. State, 2 S.W.3d 331, 335 (Tex. App.BSan Antonio 1999,
pet. ref=d) (An extraneous
offense instruction for same transaction contextual evidence is not required
during the punishment phase of a trial.). 
Accordingly, the trial court did not err in failing to give the
reasonableBdoubt instruction as to this  evidence. 








As for the
evidence that appellant and Maxie were involved in a romantic relationship, we
conclude that even if the evidence could somehow be construed as evidence of an
extraneous bad act, appellant has not shown egregious harm resulting from the
lack of a reasonableBdoubt instruction.  In reaching this conclusion, we evaluate the
charge error in light of the entire jury charge, the state of the evidence, the
argument of counsel and the record of the trial as a whole.  Almanza, 686 S.W.2d at 171.  Appellant is required to show actual, not
theoretical, harm.  Cormier v. State,
955 S.W.2d 161, 164 (Tex. App.BAustin 1997, no
pet.). 

  Appellant points to this testimony to support
her argument for a reasonableBdoubt instruction:


Q: [Prosecutor]: Isn=t it true, Ms. Rachell, that Mrs.
Maxie could do just about anything you wanted her to, right? 

A: No.

Q: You two were involved in a
romantic relationship, right? 

A: Yes, we were.

 

This testimony did
not identify any Aact@ but addressed
only a Arelationship.@  To the extent, this testimony could be
construed as a reference to a Abad act,@ there is no merit
to appellant=s argument.  Appellant offers no evidence that the jury
would have given her probation if the jury charge had included a reasonableBdoubt instruction
for this purported extraneous offense.  See
Escovedo v. State, 902 S.W.2d 109, 114B15  (Tex. App.CHouston [1 Dist.]
1995, pet. ref=d) (stating that A[o]ne factor to
consider is whether there is any actual indication that the jury might have
considered the extraneous offense because of the absence of an instruction on
the burden of proof. [t]hat is, would the jury have disregarded or discounted
the extraneous offense if the instruction had been included@).  Indeed, appellant=s counsel did not
even ask for probation during closing argument. 








In addition, this
is the only statement about which appellant complains on appeal.  This is the only time this question was asked
by the State.   After the question was
asked and answered (without objection), the State continued its line of
questioning and did not expound on the nature of appellant=s and Maxie=s
relationship.   The State did not mention
the subject again during trial; nor did it mention this evidence in its closing
argument. See  Huizar v. State,
29 S.W.3d 249, 250B51 (Tex. App.CSan Antonio 2000,
pet. ref=d) (holding
harmless error under Almanza even though the State relied on substantial
evidence of extraneous conduct in seeking punishment  and commented during closing argument at the
punishment phase of the trial that Athe State had no
burden of proof during the punishment trial@).  The only possible reference to appellant=s and Maxie=s relationship
made during closing argument was the State=s passing comment
about Maxie=s statement, Aanything for you,
baby.@   This
remark by the State was only to demonstrate the influence that appellant, as a
party to the offense, actually had over Maxie during the incident.  Indeed, Maxie=s comment, Aanything for you,
baby@ was made moments
before the assault on A.C.,  in response
to appellant=s comment, Aif you don=t do it, I will
pitch you out.@ 

          Given A.C.=s own testimony,
it is likely that the jury sentenced appellant to six years= confinement on
the facts of the convicted crime alone. 
A.C.=s testimony alone supports the jury=s imposition of
this sentence.  Further, the charge given
at punishment appropriately stated the burden of proof for the charged offense
and also placed this burden on the State. Given these instructions, the jury
could have concluded that the record as a whole supported punishment of six
years= without probation,
without considering the nature of the relationship between appellant and
Maxie.  

Finally, appellant did not request a limiting instruction
on this evidence during the guilt-innocence phase; nor does she complain on
appeal about the fact that the guilt-innocence charge did not contain a
reasonableBdoubt instruction regarding
extraneous bad acts. Therefore, in view of the entire charge, the evidence,
argument of counsel, and the entire record of the trial on punishment, we
conclude that to the extent appellant was entitled to a reasonableBdoubt instruction based on her
romantic relationship with Maxie, appellant has failed to show egregious harm
from omission of the reasonableBdoubt instruction for extraneous offenses.  See Allen v. State, 47 S.W.3d 47, 51‑53
(Tex. App.BFort Worth 2001, pet. ref=d) (finding no egregious harm based
on the totality of the evidence and notwithstanding the State=s use of extraneous offenses in
punishment argument); Brown v. State, 45 S.W.3d 228, 231B32 (Tex. App.BFort Worth 2001, pet. ref=d) (finding that appellant was not
egregiously harmed by a trial court=s failure to give reasonable doubt instruction at
punishment phase, as there was little doubt of appellant=s connection with most of the
extraneous offenses and there was no indication that lack of an instruction
resulted in greater sentence for appellant, who received probation on one
offense and a sentence at the lower end of the scale on his other
offense).   Therefore, we overrule
appellant=s first issue.








C.      Was appellant egregiously harmed by the
lack of jury instructions regarding the use of notes by the jury during
deliberations at the punishment phase of trial? 

 

In her second
issue, appellant contends that she was egregiously harmed because the trial
court failed to instruct the jury regarding the use of notes during
deliberations in the punishment phase. 
The State argues that appellant failed to preserve error on this issue
by failing to object at the trial court level. 
We disagree with the State=s argument because
we conclude that appellant=s objection on
appeal is limited to the sole issue as to whether she was egregiously harmed by
the lack of jury instructions included in the charge at the punishment phase of
trial. This is a complaint regarding jury charge error, which is not
automatically waived by failing to object at the trial court.  As discussed in section A, above, appellant
has not waived any error in this issue, but must satisfy the egregiousBharm standard in Almanza.   We conclude, as we did in the previous
section, that the trial court=s failure to
include a limiting instruction on the jury=s note-taking in
the punishment phase charge did not cause egregious harm to appellant. 

There is no
dispute that the trial court gave the proper instructions to the jury on this
issue in the guilt-innocence phase jury charge. 
The guilt-innocence phase charge was given to the jury on the same day
that the jury received the punishment phase charge.  Appellant acknowledges that the trial court=s jury
instructions in the guilt-innocence phase charge were adequate.   Thus, at the time the jury assessed
punishment, the jury already  had been
given these instructions in the guilt-innocence phase charge.  Therefore, we conclude that appellant was not
egregiously harmed.  We overrule
appellant=s second issue.

D.      Did
the trial court abuse its discretion by overruling appellant=s objection to hearsay testimony in
regard to Loretta Maxie=s statements made to the police? 

 

In her third
issue, appellant contends that the trial court abused its discretion in
overruling her objection to testimony by Detective Ackley regarding statements
made by Loretta Maxie. The State first contends that appellant failed to
preserve error on this issue by failing to object.  The State further contends that even if error
had been preserved, Detective Ackley=s testimony was
properly admitted because it was not hearsay. 









At a hearing
outside the jury=s presence, the following testimony was
elicited from Detective Ackley: 

Q: [Prosector]: Detective, at this
point, after they came in, did you ever speak with them at this point together?


A: Yes, I did.

Q: It was on theCon the day that you=ve just told us about? 

A: Yes.

Q: What, if anything, did you
observe regarding their interactions? Without going into what they said to
each other, what if anything, did you observe in their interactions with each
other? 

A: That Ms. Rachell was theCevery time I ask a question, Ms.
Maxie would defer to Ms. Rachell and talk about it and then answer my
question.  I=d ask another question, same thing
would happen. So itCsheCMs. Maxie had to defer everything
to Ms. Rachell and then they would answer the question. 

When I asked Ms. Rachell a
question, she answered it by herself. Pretty much defiant the entire time.  Didn=t really want to answer the questions I had posed to them,
which were very general at that point. 

Q: Did you later make contactCwithout going into the specifics of
the attempts of contact, when you later made contact again with Ms. Rachell, what, if
anything, changed about her demeanor and attitude in speaking about whatever
your questions were? 

A: Became much more defiant, more aggressive,
deceptive. Everything I asked, she would never come right out and give me an
answer.  It was always talked around. It
was alwaysCnever really answered any of my
questions that I had at any point in time. 

 

(emphasis added).  Once this testimony was elicited, appellant
objected that the interactions described above were irrelevant and
hearsay.  The trial court overruled
appellant=s objection.  Appellant then requested that the objection
be extended to the three questions and three answers asked during this hearing
outside the jury.  Once those questions
were asked and answered before the jury, the following bench conference
occurred: 

 








Defense Counsel: Just, just for the purposes of
the record, I ask that my running objection be extended from the beginning of
his testimony until I say to the Court that I want to stop.  I originally framed it as three questions. 

The Court: Aren=t you finished with that?

The Prosecutor: With what?

The Court: The matter that we dealt with out
of the jury=s presence initially?

The Prosecutor: Well, yes.  Now I=m just talking about his contact with them.

Defense Counsel: Just want to extend it. Not
trying to stop it.

The Prosecutor: He mayCI intend to ask him a question
about this defendant directly, but not probably between the two of them, no.

The Court: No, you=re not going into a conversation
between him and the co-defendant.

The Prosecutor: No, I=m not. Although she was not in
custody at the time, so Crawford does not apply. I don=t intend to go over anything. 

The Court: I think the running objection
probably ends at this point. 

Defense Counsel: I would then like to requestCwell, because on the theory that
what you are doing is your talkingCnot talking aboutCtell you what.  Let
me do this then.  If there=s an answer that I regard as being
interpretation, can I stand up and object to that?

The Court: Certainly. 

 

The prosecutor
continued to question Detective Ackley as follows: 

The Prosecutor: And in speakingBwithout going into what she [Ms.
Maxie] said, did
that story remain consistent or inconsistent throughout your investigation.

Detective Ackley: Inconsistent.

(emphasis added).  The State maintains appellant=s failure to
object to this question and answer waived appellate review of this issue.  We disagree with the State=s preservation
argument and conclude that appellant=s prior objections
in regard to this testimony were sufficient to preserve any error for our
review.   








However, we also
conclude that the trial court did not abuse its discretion in admitting
Detective Ackley=s testimony over appellant=s objections
because this testimony was not hearsay. 
Hearsay is Aa statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted.@  Tex.
R. Evid. 801(d); see also Long v. State, 800 S.W.2d 545, 547
(Tex. Crim. App. 1990).  Unless it falls
within an exception created by statute or rule, hearsay is inadmissible. Tex. R. Evid. 802. Detective Ackley did
not testify as to the substance of the statements made by Ms. Maxie, but merely
that her statements were not consistent throughout the investigation.  Detective Ackley further discussed how Ms.
Maxie and appellant acted toward each other but did not discuss or testify as
to what was said during these conversations. 
We conclude that the trial court did not abuse its discretion in overruling
appellant=s hearsay objections because Detective
Ackley=s testimony is not
hearsay.  

We further
conclude that, even if the trial court erred in admitting this evidence, it was
harmless error. To determine whether the erroneous admission of evidence
amounts to reversible error, we look to Texas Rule of Appellate Procedure
44.2(b), governing non-constitutional error in criminal cases.  See Tex.
R. App. P. 44.2(b).   Neither
appellant nor the State bears the burden of demonstrating whether appellant was
harmed by the trial court=s error. 
 See Johnson v. State, 43
S.W.3d 1, 5 (Tex. Crim. App. 2001). 
Rather, it is this court=s responsibility
to assess, from the context of the error, whether the judgment requires
reversal because the error affected appellant=s substantial
rights. See id.   Error affects a substantial right when it has
a substantial and injurious effect or influence in determining the jury=s verdict.  Johnson, 43 S.W.3d at 3B4.   Given the overwhelming evidence of guilt, as
discussed above, even assuming error in the admission of this testimony, we
could not conclude that appellant=s substantial
rights were violated.   Accordingly, we
overrule appellant=s third issue. 

 

 

 

 








 

Having overruled
all of appellant=s issues, we affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered and Memorandum Opinion filed April 13,
2006.

Panel consists of Justices Hudson, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).











[1]  This account
is consistent with the testimony given by Sarah Holt, A.C.=s father=s
neighbor.  Ms. Holt testified that
sometime in January 2004, she noticed a green Taurus in the driveway of A.C.=s home.  She
explained that usually there was no car in the driveway during this time of
day.