Opinion issued January 22, 2009














In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00030-CR




MICHAEL DEAMESE KELLER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 185th District Court
Harris County, Texas
Trial Court Cause No. 1066590




MEMORANDUM OPINION
          A jury convicted appellant, Michael Deamese Keller, of aggravated robbery
with a deadly weapon and sentenced him to imprisonment for 40 years and a fine of
$10,000. On appeal, appellant contends that the evidence was legally and factually
insufficient. We affirm.
                    Background
          On April 18, 2006, around 6:30 in the morning, complainant, Christopher
Walker, awoke to the sound of a knock on his door. Expecting a repairman to replace
his air conditioner, he opened the door without first looking through the peephole.
When he opened the door, Walker saw an African-American man wearing a white tee
shirt and basketball shorts, whom Walker identified at trial as appellant. Walker said
appellant was taller than him and estimated that appellant was between 5'10" and 6'
tall. He realized that this man was not the repairman, but, suspecting the man was
lost or “addled in some way,” he spoke to him, as was his habit of greeting “street
people” in his Montrose neighborhood. Walker testified that although the sun was
not completely up, he had good light outside—and a halogen light inside near the
door—and saw appellant clearly. Walker testified that appellant said a man named
“Mike” owed him money and continued speaking for less than five minutes, not
making much sense to Walker.
          Appellant asked to use Walker’s restroom and forced himself into the small,
one-bedroom apartment and into Walker’s bedroom. Walker began telling appellant,
whom he had never before met, to leave. Appellant began yanking the cords from
Walker’s laptop computer, which contained Walker’s research toward the doctoral
degree he was pursuing in microbiology. Walker put his hands on appellant’s
shoulders and again told him to leave and threatened to call the police. Walker
testified that appellant then “turned around and put a gun in my face and said, ‘You’re
not going to call the police.’” Appellant told Walker to sit down and threatened to
shoot him. Walker testified that appellant’s demeanor had become increasingly
threatening and that he was frightened.
          As appellant continued to disconnect Walker’s computer, Walker ran out of his
apartment, knocked on his neighbor’s door, and then hid behind a wall. When
Walker saw appellant leave his ground-floor apartment with his laptop computer,
Walker gave chase on foot, still dressed only in his underwear. Walker testified that
appellant turned back two or three times during the foot chase to threaten Walker by
pointing the gun at him. After Walker rounded a corner, he spotted a man leaning
against a silver Pontiac Grand Am. When Walker asked the man to call the police,
the man laughed, and Walker then assumed that he was an accomplice. Walker
paused to memorize the license plate number, looked up, and saw appellant shoot
him. He felt something hit his ankle, and he later concluded that it was a bullet
fragment. He ran back to his apartment to call the police. He testified that he was
very fearful at that moment, saying, “You can’t even describe it. I just—I wasn’t
even thinking. I turned around and ran as fast as I could.”
          Meanwhile, Walker’s neighbor, Thomas Briggs, had arisen early that same day
to wash his laundry. He testified that he was on the first floor of the apartment
complex, near appellant’s apartment at 6:15 that morning. He said that it was “pretty
dark” initially, but he noticed an African-American man approach Walker’s door. 
After about five minutes, he saw Walker “bolt out of the door” in his underwear.
Briggs returned to his second-floor apartment and looked down the street from his
balcony. He said that there was “a lot of light at that time, plenty of light.” Although
he saw nothing else, he heard a gunshot, and then he called the police.
          Sgt. Defee, a Houston Police Department supervisor and robbery investigator,
contacted Walker the next day. Sgt. Defee testified that his conversation with Walker
was “identical” to the description given in the initial police report. Sgt. Defee ran the
license plate number that Walker gave him and determined that it was registered to
Desian Hubbard. He used a government-issued photograph of Hubbard to construct
a photographic lineup, but Walker did not recognize anyone.
          About a week after the robbery, Sgt. Defee contacted Hubbard by phone, and
Hubbard confirmed that he owned a silver Pontiac Grand Am. Sgt. Defee identified
himself as a robbery investigator, but he did not tell Hubbard the date of the robbery. 
Instead, he asked Hubbard if anyone else had driven his car in the previous two
weeks. Hubbard told Sgt. Defee that he had loaned his car to appellant on April 17,
2006, and that appellant had returned it to him around 10:00 a.m. on April 18, 2006. 
          At trial, Hubbard testified that appellant was a lifelong friend. He said that he
had loaned his car, which he thought was a silver Pontiac Grand Prix,


 to appellant
around 10:00 p.m. on April 17, 2006, and that he had gotten it back the next morning
around 10:00 a.m. He testified that he recalled speaking to Sgt. Defee on the
telephone and that Sgt. Defee told him they were investigating a robbery that
involved his car. However, during and after cross-examination, Hubbard said that he
thought he had loaned the car to appellant on April 15, 2006, a Saturday. When
confronted with the inconsistencies, Hubbard agreed that he would not have wanted
to lie to a police officer, but he added, “I wouldn’t want to get myself in trouble,
neither, by the same token, yeah.”
          After speaking with Hubbard, Sgt. Defee compiled a photographic lineup
including appellant, from which Walker identified appellant as the man who stole his
computer and shot at him. Walker testified that when he recognized appellant, “It
was instantaneous and almost took my breath away, in a sense.” Although Walker
had previously described the robber as having a gold tooth, he later testified that he
believed it was actually silver, though he said the tooth had no bearing on his
identification of appellant. Walker said that he was 100% certain that appellant,
whom he identified at trial, was the man who robbed and shot at him. Sgt. Defee also
testified that appellant was the same person whom Walker identified in the
photographic lineup.
          After Walker’s identification, Sgt. Defee spoke to appellant, who was in
custody for assault at the time. Appellant denied any knowledge of, or participation
in, this offense. He suggested that Sgt. Defee investigate two men: Maurice Hall and
a man who went by the nickname “Fifth.” Sgt. Defee later created photographic
lineups around both of these men, but Walker did not recognize either of them.
          At trial, Danielle White, the mother of appellant’s son, testified on appellant’s
behalf. White initially stated that she and appellant stayed together in a motel the
night of April 17, 2006, leaving around 8:00 a.m. on April 18, 2006. Although she
became confused about the dates and said she could not recall when she was at the
motel, she insisted that they were together every morning for a year.
          She testified that she filed a police report on April 19, 2006, in which she stated
that appellant beat her as he chased her for seven blocks at a time when she was three
months pregnant. White also testified that appellant threatened to kill her. Appellant
was arrested and charged with assault. Nevertheless, White testified that she and
appellant were still together and that she had his name tattooed on the back of her
neck. Although White testified that she had never been convicted of a felony or a
misdemeanor crime of moral turpitude, the State offered a rebuttal witness to prove
that White had been convicted of the state jail felonies of unauthorized use of a
vehicle and evading arrest.
          The jury convicted appellant and sentenced him to 40 years in prison and a
$10,000 fine. In two issues, appellant challenges the legal and factual sufficiency of
his conviction. Appellant argues that: (1) there were two prior mistrials in this case;
(2) he had an alibi; (3) the victim’s identification was unreliable; and (4) there were
other suspects.Standard of Review
          When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas
v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is the same for
both direct and circumstantial evidence cases. King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh any evidence,
or evaluate the credibility of any witnesses, as this is the function of the trier of fact.
See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991). In conducting our review, we resolve
any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843.
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
Aggravated Robbery
          A person commits the offense of aggravated robbery if, in the course of
committing theft and with intent to obtain or to maintain control of the property, he
intentionally or knowingly threatens or places another in fear of imminent bodily
injury or death and uses or exhibits a deadly weapon. Tex. Penal Code Ann.
§§ 29.02(a)(2), 29.03(a)(2) (Vernon 2003). A deadly weapon is defined as:
(A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or
 
(B) anything that in the manner of its use or intended use is capable of causing
death or serious bodily injury.

Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp. 2008).Discussion
Legal Sufficiency
          We first review the legal sufficiency of the evidence. Walker, who observed
his robber at close range and in sufficient light, positively identified appellant in both
a photographic lineup and in court as the person who threatened him with a gun, took
his laptop computer without permission, and shot at him. In Johnson v. State, we held
that a victim’s positive identification of the defendant in a photographic lineup and
in court was legally sufficient to support an aggravated robbery conviction when the
victim had sufficient time and light to observe her attacker. Johnson v. State, 176
S.W.3d 74, 77 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d). We overrule
appellant’s first issue and hold that the evidence is legally sufficient to support
appellant’s conviction for aggravated robbery.
Factual Sufficiency
          We evaluate the evidence neutrally from both sides in a factual-sufficiency
review. See Cain, 958 S.W.2d at 408. Appellant points out that there was a
discrepancy in Walker’s description of the robber’s height and the color of his metal
tooth. Appellant argues that inconsistencies as to appellant’s appearance render the
evidence insufficient to support the conviction. The inconsistencies were all before
the jury, who were the judges of the facts, the credibility of the witnesses, and the
weight to be given to their testimony. See Watson, 204 S.W.3d at 417; see also
Escovedo v. State, 902 S.W.2d 109, 115 (Tex. App.—Houston [1st Dist.] 1995, pet.
ref’d) (discrepancy regarding testimony about placement of tattoo did not render
evidence insufficient in light of positive in-court identification).
          Appellant also argues that there were other suspects, Maurice Hall and “Fifth.” 
However, Walker did not recognize either of these men in photographic lineups, and
the jury was entitled to believe the testimony on this issue. See Watson, 204 S.W.3d
at 417.
          Although appellant presented an alibi defense, what weight to give
contradictory testimonial evidence is within the sole province of the jury, as it turns
on an evaluation of credibility and demeanor. Johnson, 176 S.W.3d at 78 (citing
Cain, 958 S.W.2d at 408–09). Danielle White, who provided appellant’s alibi, is the
mother of appellant’s son, had previously been victimized by appellant, and was
impeached by her lie about her criminal history. The jury was free to disregard her
testimony. See Escovedo, 902 S.W.2d at 115 (“The jury may believe or disbelieve all
or any part of a witness’s testimony.”)
          Accordingly, based on the record before us we conclude that the evidence is
neither so weak that the verdict is clearly wrong and manifestly unjust nor is the
verdict against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 11. We overrule appellant’s second issue.
Prior Mistrials
          Finally, appellant argues that the fact of two prior mistrials itself should
militate in favor of reversal for lack of sufficient evidence. An appellate court must
review all the evidence which was before the jury when assessing legal and factual
sufficiency. See Thomas v. State, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988)
(holding that reviewing court must consider even wrongly admitted evidence). Here,
neither the records from the two, earlier trials nor the fact of the prior mistrials were
before the jury. Therefore, we have properly refrained from considering them.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             James P. Sharp, Jr.
                                                             Justice

Panel consists of Justices Taft, Bland, and Sharp.

Do not publish. Tex. R. App. P. 47.2(b).